THE GEORGIA RAILROAD & BANKING COMPANY, plaintiff in error, *vs.* ROBERT M. MCDADE, defendant in error.

1. Where the official printed schedule, furnished to conductors and locomotive engineers, prescribes a given hour and minute for leaving the starting terminus, and no provision is made in the rules and regulations for starting at any other time, to enter on the trip fifteen minutes after the prescribed time has expired, is to vary from the schedule; and if done without express authority from the superintendent, or the proper general officer of the road, it is a breach of orders.
2. For conductors and engineers to abide absolutely and invariably by the schedules furnished them for running trains, except when clearly and expressly authorized to vary therefrom, is of the last importance to both life and property; and where the printed rules which accompany the schedules warn both classes of employees that they will be held responsible for the satisfactory running of the schedules, an engineer cannot excuse himself for commencing a trip fifteen minutes after his schedule time has expired, by the fact that he acted under orders from the conductor. The schedule being prescribed by their common superior, neither could absolve the other from his obligation to observe it.
3. When, according to regular schedule, one railroad train is to arrive at a given point thirteen minutes before the time fixed for another train to leave that point daily on a new trip, such point is a terminus as to the latter train, and not a meeting point as to either; especially, when real meeting points are plainly designated as such on the schedule, and the designation is omitted in respect to the point in question.
4. Under the law, which inhibits a recovery by an employee when not free from fault himself, the verdict is contrary to evidence.

Railroads.   Schedules.   Master and servant.   New trial.
Before W. L. CALHOUN, Esq., Judge *pro hac vice.*   DeKalb
Superior Court.   March Term, 1877.

Reported in the opinion.

CANDLER & THOMSON; HENRY HILLYER, for plaintiff in
error.

JOHN T. GLENN; JOHN A. STEPHENS, for defendant.

BLECKLEY, Judge.

Two trains came in collision upon the Georgia Railroad.
One of them was the down day-passenger train, bound from
Atlanta to Augusta; the other was the Stone Mountain pas-
senger train, bound from Stone Mountain to Atlanta.   The
place of collision was about two miles from the mountain,
and two or two and a half miles from a switch, the first sta-
tion above.   The precise time of the collision is not fixed
by the evidence, but it was not earlier than seven o'clock,
forty-one minutes, in the forenoon, and must have been not
many minutes later.   The official schedule for the down
train prescribed six o'clock, thirty minutes, for leaving At-
lanta, six o'clock, fifty-nine minues, for leaving the switch,
and seven o'clock, twelve minutes, for arriving at Stone
Mountain.   The official schedule for the mountain train
prescribed seven o'clock, twenty-five minutes, for leaving
the mountain, seven o'clock, forty minutes, for reaching the
switch, and eight o'clock, thirty minutes, for arriving at At-
lanta.   Thus, the time for this train to leave the mountain,
was thirteen minutes after the time for the down train to
arrive there.   The Stone Mountain train was an accommo-
dation train, running each way, daily, between the mountain
and Atlanta.   It carried no mail, and had no connections to
make.   Returning to the mountain in the afternoon, it had
to pass the up day-passenger train, bound from Augusta to
Atlanta, at Decatur.   Decatur was accordingly indicated

on the schedule as an afternoon meeting place.   The sched-
ule, as originally printed, designated the switch as a morn-
ing meeting place with the down day-passenger train, and
so, at one time, had been the actual running of the trains.
But that arrangement was discontinued, and a strip of paper
on which the changed time-table appeared in print, was
pasted over the original time-table, and over the letters de-
signating the switch as a meeting point; so that, at the pe-
riod of the collision, the switch was no longer a meeting
point, nor was there, according to the schedule then in force,
any meeting point, whatever, for the two colliding trains,
unless Stone Mountain, the starting terminus of the accom-
modation train, was to be so regarded.   The down day-pas-
senger train of that morning was prevented from leaving
Atlanta on schedule time by certain work upon the track
within the city, which was in progress, and which had to be
completed before the train could pass over.   The delay was
thirty minutes, and the train left at seven o'clock, instead
of half past six.   In leaving the switch, it was forty-two
minutes behind schedule time; that is, it left at seven
o'clock, forty-one minutes, which was just one minute after
the mountain train was due there.   The mountain train left
Stone Mountain at seven o'clock, forty minutes, having
waited fifteen minutes beyond its schedule time.   When it
left, the down train had been due at the mountain twenty-
eight minutes.   The down train having run two or two and
a half miles from the switch, and the mountain train about
two miles from the mountain, they met and ran together.
Just before the moment of collision, the engineman on the
mountain train, seeing the danger, and having reversed his
engine and put on brakes, jumped from the engine to the
ground, breaking his arm by the fall.   For this injury the
present action was brought by him against the railroad com-
pany.   He recovered twelve hundred and fifty dollars, and
the court below refused the company a new trial.

1, 2.  In the plaintiff's declaration, he alleged that the train
he was upon, to-wit: the mountain train, departed from

Stone Mountain at the time, and in the manner; prescribed by the rules and regulations and directions of the defendant. There is no complaint that the schedule, or the rules and regulations were ambiguous or imperfect, or that the plaintiff did not or could not understand them. On the contrary, he alleges, in effect, that he complied with them. Did he do this, is the main question in the case? The schedule and rules for his government were in a printed book, emanating from the superintendent of the railroad, and a copy of the book was in the plaintiff's possession. That book designated Decatur as a meeting place, but did not designate Stone Mountain as such. It fixed one time for leaving Stone Mountain, and contained no allusion to any other time. The only time for the departure of plaintiff's train was seven o'clock, twenty-five minutes. He did not go then, but went fifteen minutes later. By this variation from the plain letter of the schedule, he threw himself upon a part of the track where he had no right to be at the time the collision occurred. If he had pursued the schedule, he would have reached the switch before the down train left it. He was due there at seven-forty, and the down train waited till seven-forty-one. He started from the mountain at precisely the time he was told by the schedule to arrive at the switch. According to his own testimony, his opinion was, that it was right to start on schedule time, but he was overruled by the conductor. But the schedule was obligatory upon both alike. He cannot plead the conductor's orders as a justification for violating the printed orders of their common superior. By a clause in the printed book which contained his instructions, he was warned that "conductors and engineers will be held strictly responsible for the faithful observance of all rules, and the satisfactory running of schedule." The observance of schedule was not a divided duty, but a joint duty. If the schedule was run at all, it had to be run by both, each performing his allotted share of the work. Whenever either attempted to vary from the schedule, in a case not provided for by the rules, no running could be done, without returning to the

schedule and abiding by it. It was the chart of both. That they could not co-operate, might be a good excuse for not running at all, but could not be an excuse to either for running wrong. Where railroads have, as in this state, but a single track, and trains running in both directions, if they are to be used with the slightest approach to safety, there must be, on the part of enginemen and conductors, absolute and invariable compliance with the schedules prescribed to them. Nothing is more important—nothing can be more important. In no other way can there be any degree of security to the lives of passengers, or of innocent employees on the various trains, or to the engines and trains themselves as property. Any other mode of running means wreck and death.

3. Neither the plaintiff nor his conductor had any sufficient reason for treating the mountain as a meeting point, within the language of the printed rules. They both knew there had been a meeting point at the switch, and that it had been discontinued. They also knew that there was still a meeting point at Decatur for the afternoon trains, and that it was plainly designated as such on the schedule. They should have understood that meeting points were those only that were so denominated, and at which trains, in the regular working of the schedule, actually met and passed each other. The mountain was a starting point—as much so as Atlanta. From it the mountain train started, each morning, on a new trip. Moreover, the time for starting was not until thirteen minutes after the other train arrived. These two trains were not to meet each other anywhere. There was no meeting place for them appointed. For them to meet each other, would be wholly irregular; it would be to change the schedule, and not to run it as it was.

4. Undoubtedly, the down train was out of time. When it left Atlanta, unless it left under special orders, of which there is no evidence, it had no right to leave. We can see no justification for its proceedings, any more than for those fo the mountain train. But fault there, does not relieve the

plaintiff. Unless clear himself, he cannot recover, whatever may be the blame attached to others Under the evidence in the record, he failed to do what his declaration alleges— he failed to run according to the rules and regulations prescribed. He had no warrant for leaving fifteen minutes after his schedule time. He did leave, nevertheless, and he must take the consequences. We direct a new trial, on the ground that the verdict is contrary to evidence. It is unnecessary to deal with the charge of the court, further than to say that it should be made to conform to the views expressed in this opinion.

Cited by counsel—35 *Ga.*, 105 ; 53 *Ib.*, 630 ; 51 *Ib.*, 212 ; 55 *Ib.*, 133 ; 50 *Ib.*, 465 ; 56 *Ib.*, 645 ; 24 *Ib.*, 356 ; 54 *Ib.*, 509 ; 55 *Ib.*, 279 ; 56 *Ib.*, 277 ; 58 *Ib.*, 485.

Judgment reversed.