## The Savannah, Florida and Western Railway *vs*. Folks.

[This case was argued at the last term, and the decision reserved.]

Where the undisputed evidence showed that an engineer of a railroad company violated its rules furnished for his government in respect to passing switches and turnouts, and in respect to the speed at which trains should be run, and the precautions to be used by engineers to prevent collisions, and that a collision was occasioned in whole, or at least in large part, from his negligence in this regard, and that such collision caused his death, a recovery by his widow against the railroad for his homicide was contrary to law and unsupported by the evidence, whether or not there was also negligence on the part of the company's employés on the other train with which the collision occurred.

(a.) Such violation of rules appearing from the evidence for the plaintiff, *semble* that a non-suit should have been granted.

March 9, 1886.

Railroads. Damages. Negligence. Master and Servant. Nonsuit. Before Judge MERSHON. Pierce Superior Court. March Term, 1885.

Mrs. Susan A. Folks brought an action against the Savannah, Florida and Western Railway Company to recover damages for the homicide of her husband, who was an engineer on one of the defendant's trains, and who was killed in a collision between the train on which he was engineer and another train on the defendant's road. The facts shown by the evidence are sufficiently stated in the decision. The jury found for the plaintiff $7,000. The defendant moved for a new trial, which was refused, and it excepted.

CHISHOLM & ERWIN, for plaintiff in error.

JOHN C. MCDONALD ; LESTER & RAVENEL, for defendant.

HALL, Justice.

If the plaintiff's husband, who was an engineer in charge of one of defendant's trains which collided with another, and whose death was occasioned by this collision, was negligent in the performance of his duties, and the casualty was the result, either in whole or in part, of such negligence, then this verdict cannot stand; it is contrary to law and should be set aside. He was in charge of No. 2, which was the fast mail train, and was bound east on the day in question, and which appears to have run at full speed against train No. 11, bound west, at or near the seventy-third mile post on defendant's railway. At this point the two trains met, and according to the schedule should have passed each other. There was a side track there, nearly a third of a mile long, to enable trains coming from opposite directions and meeting to pass each other. No. 11, accord-

ing to the schedule, if it had been on time, should have been on the siding when No. 2 reached it. At each end of this side track, there is what is known as a Wharton switch, which is arranged so as to give warning to the engineer approaching it, at a distance intervening "between two telegraph poles," whether it is in order or not. Train No. 11 had been delayed by the blowing up of its head-light, and was four minutes behind-hand in reaching the switch at the eastern end of the turnout; it was nearly at that end of the turnout, standing still, when it was run into by the other train; no part of it had left the main track and gone on the siding. The other train approached the turnout at full speed; it was running thirty-five miles an hour, and did not slacken its speed or halt for an instant, but ran at that high rate the whole length of the siding from the west to the east switch, when its progress was arrested by the fatal collision with the other train, resulting in the complete and fearful wreck of both. A failure to observe the rules of the company, which seem to have been carefully framed to meet every contingency for the guidance and direction of engineers in charge of trains, in order to secure safety and to prevent collisions and other casualties, by this ill-fated engineer, was, as it seems to us, in large degree, if not wholly, the cause of this calamity. Both at the beginning and end of these rules, which had been furnished to this engineer more than twelve months previous to this time, and which it was made his duty to study and consult, were found these necessary cautions, "In train service, the first consideration must be safety. Run no risks." · "In all cases of doubt or uncertainty, take the safe course and run no risks." These cautions are in the very spirit of our legislation, which by heavy penal sanctions have endeavored to secure this end by preventing intrusions on or obstructions to the tracks of railways (Code, §§4437, 4438), and by defining and punishing criminal negligence on the part of employés, from which serious injury may occur or happen

" to any human beings" (Acts of 1876, Code, §4586(b) ), as well as several others, especially those requiring the erection of blow-posts, the ringing of bells or blowing of whistles, the slackening of speed upon approaching crossings. (Code, §§708, 709, 710), the precautions to be observed in crossing other railroads (*Ib.*, 705), and forbidding the use of explosive oils on trains. *Id.* 4585.

The east-bound train reached the passing point on time, and had the other train been on the siding, would have been entitled to the main track, and might have gone on without stopping; but before passing the engineer, by rule 16 of the company, was required to be "sure" that the cars on the turnout were clear of the main line; by certain special rules, which formed a part of the time-tables, he was admonished in reference to such particular points in " all cases of doubt to use the utmost caution, and to run no risks." Rule No. 75 made it the duty of those in charge of passenger trains to wait for each other at schedule passing points ten minutes after the schedule time for the departure of waiting trains, and to avoid any possibility of collision. Rule 74 provides that to the time required in waiting for delayed trains, " five minutes must be added for a possible variation in watches." Rule 96 enjoins this further precaution : " Engineers, upon approaching a turnout, will have their engines under such control as to prevent the possibility of an accident, should the switch be misplaced; their speed must not exceed fifteen miles an hour in passing over stub switches ;" and by rule 6 they are imperatively commanded to see that switches are in position in advance of their train while running. This engineer violated these rules, not only in approaching, but in failing to stop at the turnout, and in passing between the switches at such high speed without ascertaining, as it was his bounden duty to do, whether the train going west was on the main line or the side-track. Had he obeyed them, the collision in which he lost his life would not, in all probability, have happened. His failure to observe them was negligence on his part. These rules were laws he was

bound to obey, and having violated them, he was charge-able with negligence, which contributed in large measure, if it did not entirely cause the injury, on account of which his widow in this suit sets up her right to damages. He was running out of time, and was not entitled to the main line until the expiration of the time he should have stopped when he reached the west end of the side-track. Had he placed his train in a condition to have complied with this rule, and had he conformed to its requirements, he would have doubtless passed the train standing at the opposite end of the siding in safety. He was clearly derelict in his duty, and his negligence in this respect defeated his widow's right of action, however negligent the defendant's employés on the other train may have been. Code, §3036 and citations. *Rowland vs. Cannon*, 35 *Ga.*, 105, 107, 108, is directly in point, as to the circumstances and the questions arising thereon, with this case. In principle, the *East Tenn., Va. & Ga. R. R. vs. Duggan*, 51 *Ib.*, 212; *Ga. R. R. vs. McDade*, 59 *Ga.*, 73; *Central R. R. vs. Mitchell*, 63 *Ib.*, 181, 182, and other cases cited on the brief of counsel for the company, are decisive against the plaintiff's right of recovery.

The foregoing facts are uncontroverted, and appearing in the evidence offered by the plaintiff, it would seem that the non-suit moved by the defendant should have been awarded. Her own testimony negatived her right of recovery. But be this as it may, when the defence was fortified by much additional proof, which was not contradicted and assailed, there was no evidence on which to found this heavy verdict against the railroad company, and its motion to set it aside should have been granted and a new trial ordered. It was certainly contrary to law, and was without evidence to support it. The view taken renders it unnecessary to decide whether the defendant's employés on the other train were negligent in their conduct, or whether they failed to perform their duty, and upon this subject we express no opinion.

Judgment reversed.