# Richmond.

## NORFOLK AND WESTERN RAILWAY COMPANY v. CROMER'S ADMINISTRATRIX.

### NOVEMBER 21, 1901.

1. INSTRUCTIONS—*Partial View of Evidence—Case at Bar—Derailing Switch.*—An instruction should not be given which calls special attention to a part only of the evidence and the facts it tends to prove, and leaves out of view entirely other evidence in the cause which, if believed, ought to produce a different result. Such an instruction is misleading. In view of the evidence in the case at bar tending to show that the cars on the siding were provided with all the appliances necessary to keep them stationary, and that these appliances and all of the rest of the machinery were in good order, it was error to instruct, or to assume in an instruction, that the duty of ordinary care which the defendant owed to its servant could only be met by providing a derailing switch to prevent the moving of cars from the siding to the main track.

2. MASTER AND SERVANT—*Safe Appliances—New Inventions.*—It is the duty of the master to exercise reasonable care for the safety of his servant, but he is not bound to provide the latest inventions, or the most newly discovered appliances. He is not bound to use more than ordinary care, no matter how hazardous the business may be in which the servant is engaged.

3. MASTER AND SERVANT—*Contributory Negligence—Burden of Proof of Negligence.*—Notwithstanding the negligence of the master, he will not be liable to the servant, if the latter, by the exercise of ordinary care, could have avoided the effect of such negligence. The burden is on the servant to show the negligence of the master.

4. MASTER AND SERVANT—*Concurring Negligence.*—Concurring negligence of a master and a fellow-servant, in order to render the master liable, must be simultaneous, operative and effectual at the time of the accident, and must not stand in the relation of remote and proximate cause to the event, for if they so stand, and the

| | |
|---|---|
| 99 | 763 |
| 100 | 536 |
| 100 | 761 |
| 99 | 763 |
| 101 | 148 |
| 101 | 206 |
| 101 | 491 |
| s101 | 668 |
| 101 | 750 |
| 99 | 763 |
| 102 | 139 |
| 102 | 353 |
| 102 | 464 |
| 102 | 465 |
| e102 | 466 |
| 102 | 814 |
| 99 | 763 |
| 103 | 67 |
| 103 | 89 |
| 103 | 659 |
| 103 | 782 |
| 103 | 790 |
| 99 | 763 |
| 104 | 839 |
| 105 | 382 |
| 105 | 705 |
| 99 | 763 |
| 106 | 396 |
| 106 | 452 |
| 99 | 763 |
| 108 | 391 |
| f108 | 454 |
| 99 | 763 |
| e110 | 838 |
| 110 | 850 |

servant can, by the exercise of ordinary care, avoid the effect of the master's negligence, there is no liability on the master.

5. MASTER AND SERVANT—*Contributory Negligence.*—It is not necessary to the defence of contributory negligence to show that but for it the accident would not have occurred. It is enough to show that the negligence of the plaintiff *contributed* to the injury. The question to be determined is not whether the plaintiff's negligence *caused,* but whether it contributed to the injury of which he complains.

6. INSTRUCTIONS—*Evidence to Support.*—If there is evidence tending to prove the facts hypothetically stated in an instruction it should be given

7. NEGLIGENCE—*Burden of Proof—Probabilities.*—In an action to recover damages for an injury inflicted through the alleged negligence of the defendant, the burden is on the plaintiff to prove the negligence alleged, and the evidence must show more than a mere probability of negligence. It is not sufficient that the evidence is consistent equally with the existence or non-existence of negligence. There must be affirmative and preponderating proof of the defendant's negligence.

8. MASTER AND SERVANT—*Safe Place—Ordinary Care.*—It is the duty of a master to use ordinary care and diligence to provide a reasonably safe place in which his servant is to work, considering the character of the work to be done. In such matters, even the skillful and experienced will frequently differ in their choice of instrumentalities and methods of doing the work, and the master should not be adjudged negligent for not conforming to some other method believed by some to be less perilous than the method he has adopted. Ordinary care depends on the circumstances of the particular case, and is such care as a person of ordinary prudence, under all the circumstances, would exercise.

Error to a judgment of the Circuit Court for the city of Roanoke, rendered January 17, 1901, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The evidence sufficiently appears in the opinion of the court. After the evidence was all in, the plaintiff tendered eighteen instructions, to the giving of which defendant, by counsel,

objected, but the court overruled the objection of the defendant and gave the instructions asked for by plaintiff. They were as follows:

## I.

" If the jury believe from the evidence that the plaintiff is entitled to recover, in estimating the damage, the jury should find the sum with reference:

" First. To the pecuniary loss to the widow, at a sum equal to the probable earnings of the deceased, considering his age, business capacity, experience, habits, energy and perseverance during his probable lifetime.

" Second. They may consider the loss of his care, attention and society to his widow.

" Third. They may add such sums as they may deem fair and just by the way of solace and comfort to his widow for the sorrow, suffering and mental anguish occasioned by his death, provided they do not find over ten thousand dollars."

## II.

" The court instructs the jury, that if they believe from the evidence that what is known as a derailing switch was in common use by the defendant company at the time the plaintiff was killed, as a necessary precaution to prevent cars left upon its side tracks from drifting back upon the main line, and causing accidents, and if they believe from the evidence that in the exercise of ordinary care and precaution it became necessary that the defendant company should have had a derail switch at such a point on its side track No. 2, north, from drifting down upon the main line, and that the defendant negligently failed to perform such duty, and that such negligence was the proximate, or one of the proximate causes of the accident which resulted in the death of Percy Cromer, the defendant is liable

for the damages caused thereby, notwithstanding the defendant may not have been at fault or responsible for putting the cars in motion which had been left standing on the said side track; and the jury should find for the plaintiff and assess her damages so that the same does not exceed $10,000."

### III.

"They are further instructed that it is the duty of the defendant to use ordinary care to provide reasonably safe and suitable appliances to prevent its main tracks being obstructed by dead cars running thereon from its side tracks, and a fireman, in the discharge of his duties upon the defendant's engine, being operated upon its main track, had the right to presume that the defendant had discharged its duty to him in this respect; and, if they believe that the defendant company negligently failed to use ordinary care in discharging its duty as above set forth, and that its negligent failure to do so was the proximate cause, or one of the proximate causes of the death of Percy Cromer, they will find for the plaintiff."

### IV.

"They are further instructed, if they believe from the evidence that the loaded cars had been left upon the defendant company's side track in its yards at Pulaski, by its employees, in a careless and negligent manner, or that the employees of the said company in operating its cars and engines carelessly or negligently caused the said cars on said track to start east upon the said side track, and that after starting the said cars were carried on by their weight and ran from the said side tracks on to the main track, and caused the accident complained of, such employees were fellow servants of Percy Cromer; yet, if they further believe from the evidence that the defendant company negligenty failed to discharge its duty in using ordinary care to furnish safe appliances, and to have used like care in pro-

viding the said track upon which the said cars were left with a derailing switch at a point near its eastern connection with its main line, and should they believe if the defendant company had used ordinary care in providing such derailing switch, the cars that caused the injury would have been derailed before reaching the main track, and the accident complained of avoided, and that such negligence on the part of the defendant company concurred with the carelessness and negligence of the fellow servants, as the proximate cause in producing the death of Percy Cromer, the defendant company is liable as though it was only at fault, and if they believe from the evidence that the death of Percy Cromer was occasioned by the default of fellow servants concurring with the negligence of the defendant company, they should find for the plaintiff."

## V.

" They are further instructed, if they believe from the evidence that by the exercise of ordinary care it became the duty .of the defendant company to provide its side track, north, No. 2, with a derailing switch, at a point sufficiently near its eastern end, or by the exercise of like care it became its duty to place upon the eastern end of its side track No. 1, at a point between the main line and where side track No. 2 enters into said track No. 1, a derailing switch that would have prevented the accident which caused the death of Percy Cromer, and if they believe from the evidence that such negligent failure on the part of the defendant to use ordinary care in providing said derailing switch, as above set forth, was the proximate or one of the proximate causes of the accident which resulted in the death of Percy Cromer, they must find for the plaintiff, and assess the damages so that they do not exceed $10,000."

## VI.

" They are further instructed, if they believe from the evi-

dence, if there had been at the place of the accident a derailing
switch upon side track No. 2 properly located at its eastern end
to have derailed the dead cars and thereby have prevented their
reaching the main track, and if they believe that had said cars .
have been derailed before reaching its main track the accident
resulting in the death of Percy Cromer would not have occurred,
and, if the defendant company knew that a derailing switch was
necessary at the eastern end of said track to reasonably provide
for the safety of its employees while operating its trains upon
its main tracks, or, if the defendant company by the use of
ordinary care and diligence would have known of the impor-
tance and necessity of such switch, as above set out, and, if they
believe that by reason of the defendant negligently failing to
use ordinary care in providing such switch, and as a proximate
cause of such failure the accident occurred that resulted in the
death of the deceased, they should find for the plaintiff."

## VII.

" The court instructs the jury that it was the duty of the
defendant company to use ordinary care and diligence to pro-
vide safe and sound machinery, materials and instruments on
its cars for the protection of its servants, and such appliances
as are reasonably calculated to insure their safety, and is equally
bound to examine its tracks, and to use ordinary care and skill
to discover what instrumentalities are necessary to be supplied
for the safety of its employees, and to use ordinary care to
supply them and keep them in proper condition. This is one of
the personal duties of the company, from the neglect of which
it cannot escape liability for an injury sustained as the result of
an accident the proximate cause of which was negligence and
lack of ordinary care in the discharge of the duties aforesaid.

"The duty in using ordinary care in providing safe machinery
and appliances on the defendant's railroad tracks and cars and

keeping the same in their proper positions, for the safe operating of the trains on the tracks, is a duty, which the defendant company owed to its employees, and was a duty which the intestate as such employee had a right to presume had been performed by the defendant, and an accident resulting from the negligence of the defendant in failing to discharge its duties aforesaid would not be a risk that was assumed by the intestate when he entered the defendant's employment, and an injury sustained by him as a result of an accident, the proximate cause of which was the company's negligence aforesaid, the company would be liable in damages therefor."

## VIII.

" The court further instructs the jury, that while it is true that the intestate Percy Cromer, when he entered the employment of the defendant company, assumed all of the risk naturally incident to such employment, yet such risks did not include such accidents as are caused by the failure of the defendant company to use ordinary care in furnishing its railroad tracks with the necessary appliances for his safe protection while discharging the duties to which he had been assigned; therefore, if they believe from the evidence that by the exercise of ordinary care and prudence, it became the duty of the defendant to have had a derailing switch at such a point on either side track No. 1 or 2 north, as would have prevented this accident which resulted in the death of Percy Cromer, he, the said Percy Cromer, had a right to presume that the company had faithfully performed its said duties, and if the jury believe from the evidence that the defendant negligently failed to use ordinary care in the discharge of its duties aforesaid, and that such failure was the proximate or one of the proximate causes of the accident and injuries complained of, they should find for the plaintiff, and assess her damages so that the same does not exceed $10,000."

## IX.

" They are further instructed that when an employee enters the service of the master he assumes all risks naturally incident to his employment, but the law does not mean by this, accidents and injuries occurring from the failure of the master to use ordinary care and diligence in providing safe and sound machinery and instruments for the use of the servant, and to use like care and diligence in providing such appliances as are reasonably calculated to insure his safety, and the servant entering such service has the right to presume that the master has discharged his duty in this respect, and if an injury is occasioned by the servant because of the failure of the master to use ordinary care to provide reasonably safe and suitable appliances for his safety while in the discharge of his duties, and that such negligence on the part of the master was the proximate cause of the injury, the master is liable to the servant for damages."

## X.

" They are further instructed that although they may believe from the evidence that the engineer of the passenger train upon which the deceased was fireman, negligently failed to have his train under control at the time of the accident, yet, if they further believe from the evidence that the negligence of the defendant company to discharge its duty in using ordinary care to furnish reasonably safe derailing switches upon its side track No. 2, and if they believe from the evidence that the defendant company had failed to use ordinary care and prudence to provide a derailing switch at a safe and suitable point on its side track No. 2 between its main track and where the dead cars were left standing, and if they believe that such carelessness and negligence of the defendant company concurred with the negligence of the said engineer as a proximate cause, or one of the

proximate causes in producing the death of Percy Cromer, the defendant company is liable as though it was only at fault."

## XI.

" The jury are further instructed that where the defendant relies for its defence upon contributory negligence on the part of the deceased, Percy Cromer, such contributory negligence is not presumed, but the burden is upon the defendant to establish by proof such contributory negligence to the satisfaction of the jury."

## XII.

" They are further instructed, that if they believe from the evidence that the accident that resulted in the death of Percy Cromer was caused by the default of the engineer, a fellow servant of the said Percy Cromer, concurring with the negligence of the defendant company, the said defendant company is liable as though the said company only was at fault."

## XIII.

" The jury are further instructed, that where an injury to an employee has been caused by the default of a fellow servant concurring with the negligence of the company, the company is liable as though it was only at fault; therefore if they believe from the evidence that the engineer in charge of the engine upon which Percy Cromer was fireman at the time of his death, was guilty of negligence in not having his train under control, and in not observing the rules of the company relating thereto, and was guilty of negligence in not stopping his train in time to prevent the accident, such negligence is the negligence of a fellow servant; but, nevertheless, should the jury believe from the evidence that in the exercise of ordinary care and prudence it would have been the duty of the defendant company to have provided a reasonably safe derailing switch at a point on its side

track north No. 2, as would have reasonably provided for the safety of the employees at work on its main line, by preventing dead cars from drifting from the said side track out upon the main line, and they further believe from the evidence that the defendant company negligently failed to use ordinary care in providing its said side track with such derailing switch as here-·tofore mentioned, and that if such negligence on the part of the said defendant company concurred with the negligence of the engineer as aforesaid, as the proximate cause of the accident complained of, the defendant company is liable in damages, just as though there had been no negligence on the part of the engineer, and as though the defendant company was only at fault, and if they believe the accident was occasioned by the concurrent negligence of the engineer aforesaid, and the defendant company, they should find for the plaintiff, and assess her damages so that they do not exceed $10,000."

## XIV.

" They are further instructed that it is the duty of an employer to use ordinary care to provide suitable and safe appliances and machinery for the safety of its employees, and where an injury is shown to have resulted from the failure of the company to use ordinary care to reasonably provide safe and suitable appliances and machinery, the company is liable in damages for the injury concurring by such failure, and if they believe from the evidence that the defendant company negligently failed to use ordinary care and prudence in providing ordinary, safe and suitable derailing switches on its side track north No. 2, and that such failure was the proximate cause, or one of the proximate causes of the accident that caused the death of Percy Cromer, they must find for the plaintiff, although they may believe that had the engineer not have been guilty of negligence the accident might have been prevented." ·

## XV.

" The jury are further instructed that if the defendant company relies for its defence upon the contributory negligence on the part of the deceased, Percy Cromer, in order to avail itself of that defence, the company is required to prove:

" First. That said Percy Cromer was guilty of negligence; and,

" Second. That but for his negligence the accident would not have occurred.

" Those facts cannot be presumed, but the burden is upon the defendant to prove those facts by evidence to the satisfaction of the jury."

## XVI.

" They are further instructed that ordinary care depends on the circumstances of the particular case, and is such care that a person of ordinary prudence, under all circumstances, would exercise. And this is to be ascertained by the general usage of the business being operated by the master. The measure of the care imposed upon the master for the safety of his servants in the use and operation of its railroad, is that ordinary care which reasonable and prudent men would and do exercise in the operation of railroads having yards with side tracks emptying into its main tracks on descending grades where such side tracks are used by the company for depositing and leaving standing dead cars."

## XVII.

" The court instructs the jury that if they believe from the evidence that when the deceased entered the employment of the defendant company there was and had been for some time a derailing switch on side north track No. 1, at a point between the main line and where side track north No. 2 emptied into said track No. 1, the deceased had the right to presume it continued

there, and the burden is upon the defendant to show that the deceased had notice of its removal, or that in the course of his employment sufficient opportunity was afforded him to know of it, and in determining whether such opportunity had been afforded, the jury must consider the circumstances of the employment of the deceased with regard to the location of the said derailing switch."

## XVIII.

" They are further instructed that if a servant is injured through the fault of the master to perform any duty which the law imposes on him personally, such as providing and keeping in good order safe and suitable machinery and appliances, and such fault proximately contributed to the injury, it is no defence for the master that the negligence of a fellow servant also contributed to produce the injury, the master is liable as though he only was at fault."

Thereupon the defendant by counsel tendered to the court eleven instructions, to the giving of which the plaintiff, by counsel, objected, and the court sustained the said objection to all of the said instructions, except No. 11; and in lieu of the instructions tendered by the defendant gave four instructions of its own, to which action of the court in refusing to give instructions tendered by the defendant, and in giving the four instructions of its own the defendant by counsel excepted. The instructions tendered by the defendant are as follows:

## I.

" The court instructs the jury that if they believe from the evidence that the loaded cars which ran from No. 2 north into the main line of the defendant's road, were properly equipped with brakes; that these brakes were released and the cars allowed to move through no action on the part of the railway company, and that the railway company had placed them at a

place ordinarily used for the storing of cars, and fixed them in a way that should have prevented their moving unless tampered with; and if the jury further believe that when the said cars reached the main line of the said railway company, under the rules of said company the passenger train should have been under control and capable of being stopped, and that instead of being under control it was running at a rate of from thirty to thirty-two miles an hour, and that the brakes had not been applied up to the time of the collision, that the proximate cause of the accident was the failure of the engineer to obey the rules, and thus prevent an accident, and if the jury shall so believe, they must find for the defendant company. *Foulkes* v. *Southern Ry. Co.*, 96 Va. 742; *Vezelich* v. *Southern Pac. Ry. Co.*, Pacific Reporter, Vol. 59, No. 2, Dec. 21, 1899, page 129."

## II.

" The court instructs the jury that the law refers an injury to the proximate and not to the remote cause, and that although they may believe from the evidence that the railway company was negligent in not providing a derailing switch, yet they must find in favor of the defendant company if they further believe that the accident would not have happened but for the cars being released after being stored in the place where cars usually stand, with brakes properly set, by some person for whose action the railway company is not responsible, or if they believe that the accident would not have happened if the engineer of the passenger train had approached the point of collision with his engine under control as the rules provide."

## III.

" The court instructs the jury that the law refers an injury to the proximate and not to the remote cause, and that although they may believe from the evidence that the railway company was negligent in not providing a derailing switch, yet they must

find in favor of the defendant company if they further believe that the accident would not have happened but for the cars being released, after being stored in the place where the cars usually stand, with brakes properly set, by some person for whose action the railway company is not responsible."

## IV.

" The court instructs the jury, that if they believe from the evidence that under the rules of the defendant company it was the duty of the engineer and the deceased, as fireman, in approaching Pulaski to keep a constant lookout for obstructions on the track; and believe, further, that it was the duty of the engineer, under the rules of the company, when his train was late, to have come into the yard and to the point of collision, with his engine and train under full control, so that he might be able to detect any obstruction upon the track, and thus avoid injury; and that in Pulaski yard the engineer did not have the right of way, under the rules, and that therefore the duty was imposed upon him to be upon his guard, so as to prevent colliding with anything that might be upon the track; and if they further believe that the engineer did not check his train coming into said yard, but that he opened up after leaving North Carolina Junction, and was running at a speed of from thirty to thirty-two miles an hour, and that he did not put on brakes or otherwise stop his engine previous to the collision. Under these circumstances the proximate and immediate cause of this accident was the failure of the engineer to obey the rules and instructions under which he was working. And the court further instructs the jury that the engineer was the fellow servant of Percy Cromer, the plaintiff's intestate in this case, and that Cromer cannot recover for an accident occurring through the negligence of his fellow servant. *Clouzer* v. *Lehigh Valley R. R. Co..* 8th Am. Neg. Rep. 335; *McDonald* v. *N. and W.*

*R. R. Co.*, 95th Va. 98; *Southern Ry. Co.* v. *Mauzy*, Va. Sup.
Ct. Rep., Dec. 3, 1900, p. 575."

## V.

" The court instructs the jury that the burden of proving
negligence is upon the plaintiff, and that negligence must be
proved by affirmative evidence, which must show more than a
probability of a negligent act; that a verdict cannot be found
upon mere conjecture, and that there must be affirmative and
preponderating proof that the injury from which plaintiff's
intestate died would not have occurred except through the negli-
gence of the company in not furnishing a derailing switch, or
other negligence charged in the declaration. *C. & O. Ry. Co.*
v. *Sparrow's Admr.*, Va. Sup. Ct. Rep., Dec. 3, 1900, p. 526;
Bailey on Personal Injuries, sec. 1672 and seg. 1680-1681, *et
seq.*"

## VI.

" The court instructs the jury that a person who contracts
for the performance of the duties of a railroad fireman assumes
such risks as are incident to their discharge from causes open
and obvious, the dangerous character of which he had the oppor-
tunity to ascertain; and that if plaintiff's intestate, Percy
Cromer, entered the service of the Norfolk and Western Rail-
way Company when that company was using at some points
derailing switches and at other points not using derailing
switches, and had removed the derailing switch at the point of
accident six months previous thereto, and the decedent had an
opportunity to know that said derailing switch had been re-
moved, and continued to work for said company without com-
plaining of said removal, the jury should find for the defendant,
although they should believe the defendant company was negli-
gent in failing to supply a derailing switch. *McDonald* v. *N.
and W. Railway Co.*, 95th Va. 98."

## VII.

" The court instructs the jury that if they believe from the evidence that when Percy Cromer entered the service of the railway company as a fireman the said railway company was not using derailing switches at some points along that part of its road over which said Cromer worked, and that six months previous to this accident the derailing switch at the point of the accident was removed without complaint on his part, and that the danger from not using said switches was open and obvious, he assumed as a part of his contract of service any risk which might be caused by dispensing with said derailing switch at the point of accident, if the absence of said derailing switch could have been known to him by the exercise of ordinary diligence and observation, and it must find for the defendant company."

## VIII.

"The court instructs the jury that there is a difference between the degree of care which a railroad company owes to a passenger and to an employee. In the former case the law holds the company liable for the slightest negligence and requires it to reply by satisfactory evidence to every imputation of such negligence, while in the latter case it is bound to use only ordinary care. It is not the insurer of the safety of its employees, and in an action by an employee the burden of proving negligence is upon the plaintiff, and the plaintiff cannot recover in such actions if the jury believe that the plaintiff has failed to furnish affirmative and preponderating proof of negligence, or want of ordinary care on the part of the defendant. And the court further instructs the jury that the mere fact that the plaintiff's intestate was killed by an engine of the defendant's being thrown upon him, does not raise a presumption of negligence or want of ordinary care on the part of the defendant. *N. and W.* v. *Williams,* 89 Va. 168; Bailey on Personal

Injuries Relating to Master and Servant, sec. 1568, *et seq:*
*Ferguson* v. *N. and W.,* 79 Va. 241; *Richmond and Danville*
v. *Moffett,* 88 Va. 785; *L. and N. R. R.* v. *Atkins' Admr.,* 28th
A. and E. R. R. Cases, 514; Thompson on Negligence, 574."

## IX.

" The court instructs the jury that it is the duty of a master
to use ordinary care and diligence to provide a reasonably safe
place in which his servant is to work, considering the character
of the work to be done. In such matters even the skillful and
experienced will frequently differ in their choice of instrumen-
talities and methods of doing the work, and the master should
not be adjudged negligent for not conforming to some other
method, believed by some to be less perilous than the method
he has adopted. Ordinary care depends on the circumstances of
the particular case, and is such care as a person of ordinary pru-
dence, under all the circumstances, would exercise. The master
is not an insurer of the safety of his servants, and is liable for
the consequences not of danger but for negligence, and if the
master uses this ordinary care and adopts methods reasonably
adapted to the purposes in view, he is not liable in case of injury.
*Bertha Zinc Co.* v. *Martin,* 93 Va. 791; *Robinson's Admr.* v.
*Dinniny,* 96 Va. 41; *Southern Railway* v. *Mauzy, supra.*"

## X.

" The court instructs the jury that even though they believe
from the evidence that the defendant company was guilty of
negligence in not having kept its main track free from obstruc-
tions, yet if they further believe that the plaintiff's intestate
was also guilty of negligence in not observing the rules of
defendant company requiring him to keep a lookout to see that
the track was free from obstructions, and that his negligence in
failing so to do contributed to the happening of the accident,

and was the proximate cause thereof, they must find for the defendant. *Jackson's Admr.* v. *N. & W.*, 89 Va."

## XI.

" The court instructs the jury that the defendant company was not the guarantor of safety of plaintiff's intestate and was not bound to provide only the best and safest instrumentalities, and to use the best method for their operation, but only in the exercise of ordinary care to furnish such as are reasonably safe and adequate; that the plaintiff's intestate must have also used ordinary care to avoid the injuries, and that to entitle the intestate's administrator to recover, the burden of proof is on him to show:

"(1) That the appliances used were defective;

"(2) That defendant company knew, or ought to have known, they were defective; and

"(3) That plaintiff's intestate did not know of it, and that the injury complained of happened in spite of ordinary care on his part."

The instructions given by the court in lieu of those tendered by the defendant are as follows:

### Court's Instruction No. 1.

" The court instructs the jury that the burden of proof is on the plaintiff, except on the question of contributory negligence, and where a person charges negligence on the part of another as a cause of action he must prove it by a preponderance of evidence. In making out a case of contributory negligence the burden of proof is on the defendant. The jury are the judges of the weight of the evidence and credibility of witnesses."

### Court's Instruction No. 2.

" The court instructs the jury, that a person who contracts for the performance of the duties of a railroad fireman assumes

such risks as are incident to their discharge from causes open and obvious, the dangerous character of which he had the opportunity to ascertain, and that if plaintiff's intestate, Percy Cromer, entered the service of the Norfolk and Western Railway Company when that company was using at some points derailing switches, and at other points not using derailing switches, and had removed the derailing switch at the point of accident six months previous thereto, and the decedent knew, or ought to have known from the nature of his employment that said derailing switch had been removed, and continued to work for said company, without complaining of said removal, the jury should find for the defendant, although they should believe the defendant was negligent in failing to supply a derailing switch."

### Court's Instruction No. 3.

" The court instructs the jury, that if they believe from the evidence that when Percy Cromer entered the service of the railway company as fireman the said railway company was not using derailing switches at some points along that part of its road over which said Cromer worked, and that six months previous to this accident the derailing switch at the point of accident was removed therefrom without complaint on his part, and that the danger from not using said switches was open and obvious, he assumed as a part of his contract of service any extra risk which might be caused by dispensing with said derailing switch at the point of accident, if the absence of said derailing switch was known, or ought to have been known, to him from the nature of his employment, by the exercise of ordinary diligence and observation, and it must find for the defendant company."

### Court's Instruction No. 4.

" The court instructs the jury that even though they believe from the evidence that the defendant company was guilty of

negligence in not having kept its main track clear and free from obstructions; yet if they further believe that the plaintiff's intestate was also guilty of negligence in not observing the rules of defendant company requiring him to keep a lookout to see that the track was free from obstructions, and that his negligence in failing so to do contributed to the happening of the accident and was the proximate cause thereof, they must find for the defendant, but the burden of proving such negligence or contributory negligence on the part of the plaintiff is on the defendant."

*Watts, Robertson & Robertson,* for the plaintiff in error.

*Hoge & Hoge,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The west-bound passenger train on the Norfolk and Western railway approached Pulaski, a station on that road, at about 8:15 P. M. on January 6, 1900, one hour and thirty minutes late, and within the station limits came into collision with some freight cars which had escaped from the siding upon which they were standing, and Cromer, the fireman on the passenger train, was killed. His administrator brought suit against the N. & W. Railway Company, charging its negligence as the cause of the accident. A verdict and judgment were rendered for the plaintiff, and the case is before us upon a writ of error.

The evidence tends to show that the passenger train at the time of the collision was running at the rate of thirty miles an hour; that the rules of the railway company required that "when within the limits of the various yards, all trains must be run with great care, and under the control of the engineman. ·

"Switching engines will have the right to work within yard limits, upon the time of second and succeeding class trains, and also upon the time of delayed first-class trains, but must clear

the track immediately upon their arrival. The main track must be kept clear for first-class trains that are on time. 'First-class' trains means passenger trains, and 'second-class' trains means freight trains;" that rule 164, especially applicable to firemen, reads as follows: "When running upon the road they must keep a constant lookout ahead when not engaged in firing, and give notice to the engineman of any signals or indications of danger. If the engineman has to look away from the track in front for any reason, the fireman must maintain the watch until the engineman can resume it. They will not put coal in engines when coming into stations or at such other points as safety requires that they keep lookout ahead," and that the deceased had been furnished with a book of rules; that the yard limits at Pulaski are about one-half mile east of the scene of the accident, which occurred at a point some hundreds of yards east of the station-house, and about fifty yards east of the point where the side tracks enter the main track; that on the evening of January 8th, thirteen freight cars loaded, some of them with iron, and others with coke for the use of the Pulaski furnace, were standing about 600 yards west of its intersection with the main track; that one of the cars had been inspected on the 2nd, seven of them on the 6th, and five of them on the 7th. of January; that they were sufficiently equipped with brakes, which were in good order, and that they were standing upon the siding controlled by the brakes at about six o'clock on the evening of the accident, and that the cars would not have been moved unless the brakes had in some way been released.

The following occurrence is of interest as tending to show the sufficiency of the brakes to control the cars upon the sidings: On Saturday preceding the accident, the employees of the company charged with that duty were putting cars in upon the siding, some of which were loaded with coke. When they came into contact with cars laden with ore standing towards the east end of the siding, the coke cars, which were being pushed, and

the ore cars, which were at rest, did not couple, and the latter were put in motion by the jar. A brakeman sprang from the car upon which he was standing, overtook the ore cars, seven in number, which were moving off, applied brakes sufficient to stop them, and then at least two more brakes, out of abundant caution. It would seem that brakes which were sufficient to stop cars when in motion would be ample to hold them when at rest.

There is a suggestion on the part of counsel that the brakes might have been so affected by expansion and contraction, due to natural causes, as to render them ineffectual, but there is no evidence to that effect. At the junction of the siding with the main track there is a device known as the "Romapo Switch," which works either by hand or automatically, and is so arranged that if thrown for the main line—that is to say, so adjusted that a car upon the siding could pass to the main line—or if a car were to run through the switch as the result of an accident, it would show a red light, or the absence of any light, should it chance to be extinguished or obscured from any cause, would be a warning of danger. In other words, a white light at the switch is the only assurance of safety. The rules prescribe, as we have seen, that within the limits of the yards trains must be "run with great care and under control of the engineman," and the evidence shows that a train is under control when it can be stopped promptly or within the limit of vision.

It appears that at many points on the N. & W. railway there are upon the sidings derailing switches, by which one of the rails is moved so as to break the continuity of the track and derail a car passing over it; that there had been such a switch at Pulaski, which had been removed about six months before the accident, and there is no direct evidence that Cromer knew either of its former existence, or of its subsequent removal. There is evidence tending to show that such a contrivance is necessary to prevent the escape of cars placed upon sidings, and also evidence that they are used only where there is a continuous descending

grade from the siding to and upon the main track, so that a car escaping from the siding would run wild upon the main track, and that at Pulaski there was not a continuous descending grade from the siding to the main track, but after passing out upon the main track the escaping car would be brought to a standstill by an up-grade.

There is a good deal of conflicting evidence as to the effect of a derailing switch, some witnesses regarding it as a complete protection against cars leaving a siding, while others state that when the derailer is placed at the usual point, near the intersection of the siding and the main track, a number of cars getting loose upon the siding, the one in front becoming derailed, a wreck would be caused if the cars had acquired any considerable momentum, and in case of a wreck it might block the main track, as no one could foretell in what direction wreckage would be thrown. That this had occurred at Pulaski on one occasion before the derailer was taken out, and the main track had been blocked. If the derailer were placed a sufficient distance from the main track this danger would be removed, but the side track between the derailer and the main track would be useless, and therefore derailers were placed a short distance from the point of intersection. The evidence fails to show at what precise time the freight cars escaped. They are shown to have been on the siding with sufficient brakes, in good order, and properly set, at about six o'clock on the evening of the accident. Collision occurred at about 8:15 P. M. At what time intermediate between 6 and 8:15 they escaped is left to mere conjecture.

The evidence shows that the engines, cars, tracks, and general equipment of the road were in a reasonably safe condition, and the negligence imputed seems to rest upon the proposition that it was the duty of the road to maintain a derailing switch at this point; while the railroad company relies for its defence—first, upon the absence of any proof of negligence on its part; and

VOL. XCIX—99

.secondly, upon the charge of contributory negligence on the part of the deceased.

These being the facts which the evidence tends to prove, we will consider the instructions given to the jury.

The second instruction asked for by Cromer's administrator and given by the court is erroneous. It leaves out of view all appliances furnished by the railroad company for controlling cars upon side tracks, and leaves the jury to determine from the evidence that the absence of a derailing switch was in itself such negligence as rendered the defendant company liable for the accident which occurred. It may be, as is stated in the instruction, that a derailing switch was in common use at the time, but its use elsewhere may have been under conditions altogether different from those which existed at Pulaski. It is also erroneous because it states that if the negligence of the defendant company was the proximate, or one of the proximate causes, of the accident which resulted in Cromer's death, the company is liable in damages. It may be that the absence of the derailing switch was a condition in the absence of which the accident would not have occurred, but assuming that there may be more than one proximate cause for the occurrence, and that the negligence of the railroad company was one of those proximate causes, the instruction as drawn would in such case be misleading. The railway company claims that the contributory negligence of Cromer himself was the proximate cause of the accident, and there is evidence tending to prove that contention. To single out, therefore, one element of negligence and make that the foundation for holding the company responsible would be error. Had the instruction been correctly drawn in other respects, and the negligence of the defendant company stated as the proximate cause of the accident, it would have been free from objection, but under the facts in this case, and under the instruction as drawn, the jury would have been warranted in fixing responsibility upon the railway company, although

they might have believed that the accident was in part at least due to a cause for which the railway company was not responsible. The railway company was bound to exercise reasonable care for the safety of its employees, but was not bound to provide the latest inventions or the most newly-discovered appliances. The master is not required to use more than ordinary care, no matter how hazardous the business may be in which the servant is engaged. *Bertha Zinc Co.* v. *Martin's Adm'r*, 93 Va., 791; *Berns* v. *Coal Co.*, 27 W. Va., 285; *Titus* v. *R. R. Co.*, 136 Penn. St., 618; *Coppins* v. *R. R. Co.*, 43 Hun, 26.

The law is well stated in *Kern* v. *Refining Co.*, 125 N. Y., at page 54: "The master, in performance of his duty to his servants, is not bound to furnish the best known appliances, but such only as are reasonably safe; the test is not whether he has omitted to do something which he could have done, nor whether better machinery might have been obtained, but whether his selection was reasonably prudent and careful, and whether the machinery provided was in fact adequate and proper for the use to which it was to be applied. *Stringham* v. *Hilton*, 111 N. Y., 195."

Ignoring all the appliances with which the freight cars were equipped and which the evidence tends to show were sufficient for their control, this instruction singles out the derailing switch, and authorizes the jury to consider its absence as in itself sufficient to establish the negligence of the defendant. Judge Riely said in *New York, &c., R. R. Co.* v. *Thomas*, 92 Va., 609: "Calling the special attention of the jury to a part only of the evidence, and the particular fact or facts it may tend to prove, and ignoring the residue of the evidence and the facts it may tend to prove, gives undue prominence to such recited evidence, and disposes the jury to regard it and the fact it tends to prove as the particular evidence, and the facts to be relied on in determining the issue before them, and thus misleads them." See *Montgomery's Case*, 98 Va., 860.

Instruction No. 4 tells the jury that if they believe from the evidence that loaded cars were left upon the side track in the yards at Pulaski in a careless and negligent manner by the employees of the company, or that the employees operating its cars and engines carelessly and negligently caused them to start east upon the side track, and were carried by their weight from the side track to the main track and caused the accident, such employees were fellow-servants of Percy Cromer; but if they further believed from the evidence that the defendant company failed to discharge its duty to furnish reasonably safe appliances and to provide the side track with a derailing switch, the defendant company was liable.

After a careful examination of the evidence, we have been unable to discover any proof that the cars upon the side track were placed there in a careless or negligent manner, or that the employees of the company by their negligence set those cars in motion. On the contrary, the only evidence upon the subject is to the effect that two hours before the accident occurred these freight cars were standing where they had been placed, under control of the brakes with which they were equipped.

The fifth instruction proceeds upon the idea that the duty of the defendant company to exercise ordinary care for the protection of its employees could only be met by providing a derailing switch to prevent the movement of cars from the side track to the main track.

In the case of *Hewitt* v. *Railroad Co.*, 67 Mich., 61, it was held: "Where, in a suit against a railway company for injuries sustained by a collision with a flat car which had by some means run out from a side track on to the main line, there was no testimony tending to show that the side track was not in proper condition, or in such condition that, in the use made of it by the company, exercising care, a flat car standing upon the siding was in danger of coming out upon the main line, nor that ordinary care was not observed by the company in placing the cars

where it did upon the side track, and which it had been accustomed to do, with an experience of safety, for more than sixteen years.

"Held: That the jury should have been instructed, as requested by the defendant, that it was not its legal duty towards the plaintiff, an engineer in its employ, to provide said side track with stop-blocks, and that its omission so to do was not an actionable negligence; and that a modification of such request by leaving it for the jury to find whether such car was liable to get out on to the main line by reason of any peculiar construction or condition of the side track was error."

The case just cited is far stronger against the railroad company than the one under consideration, for in that case it appears that the flat car which escaped, and with which the moving train came into collision, was not furnished with brakes, the court holding that it was not the legal duty of the defendant to provide the car with brakes; and the jury were instructed that "if it had no brakes at the time of the accident, this did not establish the negligence in that regard against the defendant, nor entitle the plaintiff to recover." It was also held that "a railway company is not bound to change its manner of using its side tracks, nor adopt the most approved ways or appliances in business; and if one of its servants, knowing, or having ample means of knowing from long-continued employment, the way and manner in which the side tracks are used, continues in the employment without complaint, and if from such way and manner is subjected to risks or accident, he is presumed to assume such risks, and, if injured thereby, cannot recover."

The eighth instruction is obnoxious to the same objections that have already been pointed out with respect to the second instruction.

The tenth instruction is, we think, erroneous. It tells the jury that although the engineer of the passenger train may have been guilty of negligence in failing to bring his train under

control when he approached the station, yet if, in the opinion of the jury, the defendant company was negligent in not having furnished a derailing switch, they should find for the plaintiff. The evidence does not show at what time the freight cars left the siding and entered the main track. They were safely upon the side track at 6 P. M. They were upon the main track at 8:15 P. M., but at what instant of time they escaped does not appear. If they were upon the track when the engineer approached the station, then, although it may be conceded that the freight cars escaped through the defendant's negligence, yet the defendant would not be liable if the engineer by the exercise of ordinary care could have avoided the consequences of such negligence. This is a principle so well established as to need no citation of authority.

In this case the negligence, if any, of the company consisted in the escape of the freight cars from the siding, and their presence on the main line. At what time they reached the main line does not appear. If they were there when the moving train approached Pulaski, then in passing the Romapo switch it must have displayed a red light, or if the device by which that signal should have been exhibited was put out of order by the freight cars passing through the switch, or the cars intervened and obscured the light, or if from any cause a white light was not shown, all were equally warnings which it was the duty of the engineer and fireman to observe and to heed, and had they done so it would seem that the consequences of the defendant's negligence, conceding that the evidence establishes such negligence, might have been avoided, for the cars which it negligently permitted to escape, if such be the fact, were at rest, and could have been seen, and a collision with them avoided by the approaching train, had the rules of the company been observed. This is so unless the freight cars moved out upon the main track as the passenger train drew near, or so recently before that there was not reasonable opportunity afforded the engineer and fireman

to discover the presence of danger and take precautions for its avoidance. But we cannot assume the time at which the freight cars reached the main track, and if that fact is of importance it is for the plaintiff to prove it, or it must at least appear in the evidence. The plaintiff cannot, as we shall presently see when we come to the discussion of a subsequent instruction, ask the court to indulge in speculation or conjecture as to the cause of the accident. It was erroneous, therefore, to tell the jury, as this instruction does, that the railroad company would be responsible notwithstanding the negligence of the engineer if the escape of the freight cars from the siding was due to the negligence of the defendant company.

The thirteenth instruction states that where an injury to an employee has been caused by the default of a fellow-servant concurring with the negligence of the company, the company is liable as though it only were at fault, and that if they believe that the engineer of the train upon which Cromer was fireman was negligent and failed to have his train under control, in obedience to the rules of the company, such negligence is the negligence of a fellow-servant, but nevertheless that if it was the duty of the defendant company to provide a derailing switch in order to prevent dead cars from drifting from the side track upon the main line, and it was negligent in failing to provide such derailing switch, such negligence concurred with the negligence of the engineer as aforesaid, as the proximate cause of the accident complained of, and the defendant company is liable.

At the risk of repetition, we must say with respect to this instruction that it singles out the absence of the derailing switch and presents it to the jury as controlling evidence of negligence, or at least leaves them to determine, without regard to the other facts proved in the case, that the failure to provide a derailing switch was sufficient to warrant a verdict for the plaintiff, leaving out of view altogether other provisions made for the control of cars upon the siding which may have been entirely adequate,

and which the evidence tends to prove were quite sufficient. When it is said that an injury to an employee caused by the default of a fellow-servant concurring with the negligence of the company renders the company liable, as though it only were at fault, it is necessary to the application of the principle that the negligent act of the fellow-servant and that of the company should concur in producing the result; that is to say, must be simultaneous, both of them operative and effectual at the time of the accident, and not stand in the relation of remote and proximate causes to the event, for if the latter be the case, then the situation would be controlled by the principle just adverted to, that though a negligent act upon the part of the company may be established, the plaintiff would not be entitled to recover, if by reasonable care upon his part the consequences of the defendant's negligence could have been avoided.

The fourteenth instruction is objectionable for reasons already stated, and which need not be repeated.

Instruction No. 15 undertakes to define contributory negligence, and tells the jury that if the defendant company relies for its defence upon the contributory negligence of the deceased, Percy Cromer, in order to avail itself of that defence, the company is required to prove—first, that said Percy Cromer was guilty of negligence; and second, that but for his negligence the accident would not have occurred, and that the burden is upon the defendant to prove such negligence.

It is not necessary to the defence of contributory negligence to show that but for it the accident would not have occurred; that would make it the sole and not the contributing cause of the accident.

"One who, through the mere negligence of another, suffers an injury which would not have happened, but for his own or his agent's wrongful act or want of ordinary care, proximately contributing thereto, cannot recover at common law any compensation for such injury, unless its more proximate cause is the

omission of the other party, after having notice of the danger
to use due care to prevent injury. This rule applies to all cases
of *mere* negligence, no matter how gross it may be." Shear-
man & Red. on the Law of Neg. (5th ed.), sec. 61. This is in
entire accordance with what was said in considering instruction
No. 10.

Assuming that the presence of the freight cars upon the main
track was evidence of negligence upon the part of the defend-
ant company, yet, if by the exercise of ordinary care on the part
of the engineer or fireman the presence of those cars upon the
track could have been discovered in time to prevent a collision,
then it is obvious that the negligence of the fireman or engineer
is the proximate cause of the injury, and not the precedent neg-
ligence of the railroad company, the consequences of which
could have been avoided. In such a case the negligence of the
employees and the original negligence of the defendant com-
pany are not concurrent, but stand to each other in the relation
of proximate and remote causes. The very term "contributory
negligence" implies that it need not be the exclusive cause of
the injury. It is enough if it contributes to the injury. "It is
not essential to this defence that the plaintiff's fault should have
been, in any degree, the cause of the event by which he was
injured. It is enough to defeat him, if the injury might have
been avoided by his exercise of ordinary care. The question
to be determined in every case is, not whether the plaintiff's
negligence caused, but whether it contributed to the injury of
which he complains. This it may do by exposing him to the risk
of injury, quite as effectually as if he committed the very act
which injured him. Neither is it necessary that the plaintiff's
negligence should have contributed to the injury in any greater
degree than the negligence of the defendant." Shear. & Red.
on the Law of Negligence (5th ed.), sec. 96. These principles
are elementary, and the text from which we quote is supported
by a great array of authority. *R. R. Co. v. Patterson,* 93 Ill.,

290; *Railway Co.* v. *Folkes,* 76 Ga., 527; *Sutherland* v. *R. R. Co.,* 125 N. Y., 137.

We come now to the instructions asked by the railroad company. All the propositions embraced in instructions numbered 1, 2, and 3 are stated in a manner more directly applicable to the present case in instruction No. 4. There is evidence tending to prove all the facts hypothetically stated in that instruction, and if the jury believe that they were proved, then the conclusion would necessarily follow, and the negligence of the engineer, the fellow-servant of Cromer, would have been the proximate cause of his injury.

Instruction No. 5 tells the jury that the burden of proof is upon the plaintiff to prove negligence, and that the proof must amount to more than a probability of a negligent act; that the verdict cannot be founded upon conjecture.

In Bailey on Personal Injuries, sec. 1672, *et seq.*, the law upon this point is clearly and tersely stated: "Where it is necessary to show a certain state of facts, it is not sufficient to prove two or more different states of case, one of which may be sufficient, but either of which may equally, under the testimony, have existed.

"The plaintiff must prove something which warrants the inference of negligence on the part of the defendant, and not base his case upon facts just as consistent with care and prudence as with the opposite.

"Where the evidence is equally consistent with either view, the existence or non-existence of negligence, it is not competent for the judge to leave the matter to the jury. The party who affirms the negligence has failed to establish it. This is a rule which never ought to be lost sight of.

"An inference cannot be drawn from a presumption, but must be founded upon some fact legally established."

The principle there stated is affirmed in *C. & O. Rwy. Co.* v. *Sparrow,* 98 Va., at page 640, where Judge Cardwell says: "To

fix a liability upon the master for injuries sustained by a servant while engaged in his employment, the negligence of the master, as the proximate cause of the injury, must be proved by affirmative evidence, which must show more than a probability of a negligent act." And in the same opinion the case of *Sorenson* v. *Menasha Paper Co.*, 56 Wis., 338, is quoted with approval: "When liability depends upon carelessness or fault of a person or his agents, the right of recovery depends upon the same being shown by competent evidence, and it is incumbent upon such a plaintiff to furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess, or random judgment, upon mere supposition, without a single known fact."

It is suggested by counsel for plaintiff that the effect of changes in temperature in expanding and contracting the brakes might have released their hold upon the cars and been the cause of the accident, but there is no proof upon the subject. In *Hewitt* v. *R. R. Co.*, *supra*, it was claimed that the car could have been moved by the wind which was blowing the evening of the collision, or by some force imparted to it by a freight train which ran into the siding a few minutes before the collision and remained until another train had passed and then drew out. " No one, however, (says the court), saw the freight train touch or come in contact with the flat car while the former was upon the siding. The record discloses nothing but mere conjecture how, and by what power, and in what manner, the car was run upon the main track and placed in the position it was found when the plaintiff's engine struck it. The defendant, however, without pretending to any knowledge as to how the car was moved out on the main line, advances a theory really quite as plausible upon the subject as any suggested by the plaintiff, which was that some person or persons, through malicious motives, took that occasion and such means to obstruct the track .

on the defendant's main line, in such manner as to cause the collision that occurred, and actually gave some testimony which tended in that direction."

Instruction No. 5 correctly propounds the law, and should have been given.

The ninth instruction asked for by the defendant should have been given. It correctly states the law to be that it is the duty of the master to use ordinary care and diligence to provide a reasonably safe place in which his servant is to work, considering the character of the work to be done; that in such matters even the skillful and experienced will frequently differ in their choice of instrumentalities, and the master should not be judged negligent for not conforming to a method believed by some to be less perilous than the one he has adopted; that ordinary care depends on the circumstances of the particular case, and is such care as a person of ordinary prudence would exercise under all the circumstances.

Did the master exercise reasonable care for the safety of his employees—such care as a person of ordinary prudence would under the circumstances have exercised? *Bertha Zinc Co.* v. *Martin's Adm'r*, 93 Va., 791. There is evidence tending to prove that such care was observed by the railway company. Its tracks, side tracks, switches, indeed, its whole road-bed, were under the supervision of competent officials. There is no evidence of the incompetency of any official charged with the construction, care, and supervision over the roadway, including sidings and switches. There is evidence tending to prove that the engine, cars, tracks, and general equipment of the road were in a reasonably safe condition, and that the escaping freight cars were equipped with brakes sufficient to control them. As was said in *Hewitt* v. *R. R. Co.*, *supra:* "It is not contended but that the defendant procured the services of competent and skillful servants, engineers, and mechanics in the grading and construction of its tracks at that station, and its testimony is to the

effect that the tracks were properly made and constructed. It is true, the contrary is claimed by the plaintiff, but the record contains no proof to support the claim."

Instructions Nos. 2 and 4 given by the court are erroneous, for reasons which have already been sufficiently considered.

Exception was taken by the defendant to the closing speech before the jury of counsel for defendant in error, but as the case must go back, we shall not pass upon this assignment of error, as the passages objected to, some of which approached, if they did not transcend the bounds of propriety, may not be repeated.

We deem it inexpedient to express any opinion upon the evidence, except as we have found it necessary to do so in passing upon the instructions given and refused.

Upon the whole case we are of opinion that the judgment of the Circuit Court should be reversed.

*Reversed.*