## Richmond.

## ABERNATHY V. EMPORIA MANUFACTURING COMPANY.

### March 21, 1918.

1. APPEAL AND ERROR—*Record—Certification of Evidence.*—Where the evidence and not the facts are certified, the case stands in the Supreme Court of Appeals as on a demurrer to the evidence by the plaintiff in error.

2. FIRES—*Presumptions and Burden of Proof—Instructions.*—In an action for damages by fire an instruction that the burden is on the plaintiff to show by a preponderance of evidence how and why the fire occurred and to warrant a verdict for the plaintiff the final burden rests upon him to prove by a preponderance of evidence that the origin of said fire was due to the negligence of the defendant, is not erroneous and is not calculated to convey to the jury the idea that the plaintiff is required to prove his case beyond a reasonable doubt. When the instruction is read as a whole, it did no more than tell the jury that the burden was upon the plaintiff, by a preponderance of the evidence, to establish the fact that the fire in question was set out by the defendant, or to trace the origin of the fire to the defendant's agency. The object of the instruction was to tell the jury that they could not guess at the origin of the fire, but that this fact must be established by evidence, and that, in order to fix a liability on the defendant by finding a verdict in his favor against the defendant, the burden was upon the plaintiff to show, by a *preponderance* of the evidence, "that the origin of said fire was due to the negligence of the defendant."

3. INSTRUCTIONS—*Language Used in Opinion.*—Language used by an appellate court in deciding a case may be entirely proper and correctly state the law, and yet be wholly unsuitable as an instruction to the jury, even where the facts of the two cases are similar. The appellate judge frequently uses argumentative language and also freely expresses his opinion upon the facts of the case, neither of which would be appropriate in an instruction to the jury. So that the mere fact that certain language has been used by the judge of the appellate court in

rendering an opinion is not of itself sufficient to justify the use of the same language by a trial court in its instruction to the jury.

4. FIRES—*Instructions.*—In an action for damages the jury were instructed that if they "believe from the evidence that the fire in question originated on the right of way of the defendant by the emission of sparks or coals of fire, yet if they believe from the evidence that said right of way was reasonably clear of combustible materials liable to ignition, then the defendant is not liable," is erroneous.  The instruction should have gone further and said, that if the right of way was reasonably clear of combustible material, and the defendant's locomotives were equipped with the best appliances in known practical use, that they were in good order and carefully operated, then and in that event they should find for the defendant.

5. APPEAL AND ERROR—*Reversible Error—Instruction Cured by Instruction.*—A defect in one instruction is not cured by a correct statement of the law in another, where the appellate court is unable to say that the jury could not have been misled by the defective instruction.

6. INSTRUCTIONS—*Two or More Propositions of Law.*—Two or more correct propositions of law may be stated in the same instruction, if the jury will not be confused thereby.

7. FIRES—*Instructions—Where Fire Might Have Originated from Two Causes.*—In an action for damages by fire the jury were instructed that not "only is the burden of showing negligence by a preponderance of the evidence upon the plaintiff, but if the fire may have been started from one of two causes, for one of which the defendant is responsible, but not for the other, the plaintiff cannot recover; neither can he recover if it was just as probable that the fire was caused by the one as by the other;" that is to say, that if the jury believe that the fire might have been set out by the boys who were smoking cigarettes, as well as by sparks from the engine of the defendant, or if it was just as probable that the fire was caused by the one as by the other, they should find for the defendant.

*Held:* That, an objection to this instruction that it consisted of many incongruous, unrelated and contradictory propositions bound up together, could not be sustained.

8. INSTRUCTIONS—*Not Based upon the Evidence.*—In an action for damages by fire, where the defendant offered evidence to support its theory that it was not responsible for the origin of the fire, and evidence was introduced to the effect that two boys smoking cigarettes were seen going in the direction in which the fire originated at a propitious time for the fire to have

been set out through their negligence, the instruction set out in the preceding headnote is not erroneous as taking a partial view of the evidence and as being based upon a mere scintilla of evidence.

9. FIRES—*Evidence—Instructions.*—In an action for damages by fire an instruction was given that unless the jury believe from the evidence "that engine eleven might have caused the fire complained of, they should not consider any evidence relative to fires testified to have been set out by engine eleven nor the evidence relative to what is known as 'second fire,' or the fire west of Woods Camp, unless they believe that the engine that might have caused the fire in question might also have originated that fire." The evidence showed that but two engines, numbers eleven and twelve, had run on the railroad the day of the fire and the evidence for the defendant clearly showed that engine number eleven could not have set out the fire. But there was some evidence on the part of the plaintiff that number eleven as well as number twelve might have set out the fire.

*Held:* That the instruction was not erroneous as incoherent and as combining two distinct charges with reference to two severable questions which were so inextricably blended as to be utterly misleading and confusing to the jury.

10. FIRES—*Evidence.*—In an action for damages by fire, if the fire could only have been set out by one of two engines and one of these was eliminated entirely, then the evidence relating to fires set out by the eliminated engine was not proper for the consideration of the jury.

11. FIRES—*Instructions—Proof of Negligence—Inference from a Presumption.*—In an action for damages by fire, the court instructed the jury "that in order to warrant a verdict against the defendant, the evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established."

*Held:* That, the instruction was not erroneous, while the statement in the instruction, that an inference cannot be drawn from a presumption, but must be founded upon some fact legally established, could not have been very helpful to the jury, yet in view of other instructions given in the case it could not have led them astray.

12. FIRES—*Instructions—Repetition of Instructions.*—There is no error in refusing an instruction where the jury had already been sufficiently instructed on the subject, and almost in the very language of the instruction requested.

13. FIRES—*Evidence—Condition of Right of Way.*—In an action for damages by fire, the exclusion of testimony offered by the plaintiff, that the defendant's right of way was not clear and free of combustible material at a point a mile from where the fire occurred, was not erroneous, although the officers of defendant testified that the right of way of defendant had been raked and burned shortly before the fire, from which it might naturally be inferred that the entire right of way had been raked and burned shortly before the fire, whereas the testimony of the witness offered showed that it had not been raked and burned throughout its entire length. The evidence offered was immaterial as tending to show what the condition of the track was at the point at which the fire originated.

14. FIRES—*Evidence of Other Fires.*—In the instant case, at least one witness for the plaintiff testified that engine number eleven as well as engine number twelve had passed the place where the fire originated shortly before it broke out. It was, therefore, competent for the plaintiff to show the bad condition of engine number eleven soon after the fire, and the exclusion of evidence that engine number eleven had been seen to set out a fire shortly after the fire in question was erroneous.

15. WITNESSES — *Impeachment — Inconsistent Statements.*—It was error to admit evidence of a prior consistent statement of a witness who had testified to a materal fact in the case, where it was not shown whether the contradictory statement of the witness was made before or after the consistent statement, nor was the date fixed when the witness was alleged to have offered to sell his testimony to the plaintiff. The testimony in the instant case does not bring the statement within the rule which permits evidence of a prior consistent statement before the time when the supposed bias or corruption could have existed, in order to repel the presumption that the present testimony was attributable to such bias or corruption.

16. WITNESSES—*Examination of Witnesses—Leading Question—Appeal and Error—Reversible Error.*—Great latitude is allowed trial courts in the matter of the examination of witnesses and their rulings thereon will not be reversed unless clearly prejudicial to the party excepting. Ordinarily, permitting a leading question to be asked is no ground for reversal.

17. APPEAL AND ERROR—*Harmless Error—Conduct of Counsel.*—In cross-examining a witness defendant's counsel said: "I know, Mr. Turner, this situation myself, and there are others who know it, and I want to ask you to see if we coincide." *Held:* That this could not have prejudiced the plaintiff.

52

18.  JURY—*View by Jury—Discretion of Court.*—The question of the propriety of ordering a view lies largely in the discretion of the trial court, which should only grant it when it is reasonably certain that it will be of substantial aid to the jury in reaching a correct verdict, and whose decision will not be reversed unless the record shows that a view was necessary to a just decision.

19.  JURY—*View by Jury—Discretion of Court*—In the instant case, there was no controversy as to the location of the road, and the general conditions surrounding it, and there was no necessity for a view in order to assist the jury in understanding the testimony. The testimony in connection with a plat used on the trial would seem to have been clear enough without the necessity for a view. In addition to this, it appears that delay in the trial would have been caused by ordering a view, and that the plaintiff had not made any provision to take the jury to the scene of the fire.

*Held:* That, the trial court did not err in refusing to order a view.

Error to a judgment of the Circuit Court of Lunenburg County, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Buford & Peterson,* for the plaintiff in error.

*Irby Turnbull* and *Hiram Wall,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This is an action brought by the plaintiff in error to recover the value of a large quantity of lumber destroyed by fire, which was alleged to have been set out by the engine of defendant in error. The defendant in error operates a lumber manufacturing plant. It owns a considerable amount of timber in the county of Lunenburg, and in con-

nection with its enterprise is engaged in hauling logs from the woods to its sawmill.  Its transportation system consists of a logging railroad, over which it operates regular trains from its principal camp in Lunenburg to a junction point called South Hill, on the Southern Railway.  The logging road is a railroad of inferior character, and over it there are used regularly two engines to pull its trains.

On April 27, 1915, a fire broke out on or near its railway track, which was communicated to the plaintiff's lumber and destroyed it.  The defendant's contention is that the fire was not set out by its engines.  There was a verdict and judgment for the defendant, to which judgment this writ of error was awarded.

The first error assigned is that the verdict was contrary to the law and the evidence.  The evidence and not the facts being certified, the case stands in this court as on a demurrer to the evidence by the plaintiff in error.  Code, sec. 3454.

The theory of the defendant was and is that the fire was not set out by its engines, and, viewed as on a demurrer to the evidence by the plaintiff in error, the evidence to support the verdict is so abundant that it is deemed unnecessary to recite it here.  Some of it is hereinafter given in the discussion of the fourth assignment of error.

The second assignment of error is to the action of the trial court in giving the following instruction:

"The court instructs the jury that the burden is on the plaintiff to show by a preponderance of evidence how and why the fire occurred and to warrant a verdict for the plaintiff the final burden rests upon him to prove by a preponderance of evidence that the origin of said fire was due to the negligence of the defendant."

The chief objection urged to this instruction is to the use of the expression "how and why," and it is said that the repeated reiteration of the duty of the plaintiff was calculated

to convey to the jury the idea that the plaintiff was required to prove his case beyond a reasonable doubt. We cannot concur in this conclusion. It cannot be doubted that the burden was upon the plaintiff to offer evidence to prove the origin of the fire, also to show by a preponderance of the evidence that the defendant was responsible therefor.. This, the first part of the instruction assumed to do. The instruction then, as if by way of explanation of what had been stated, proceeds, "and to warrant a verdict for the plaintiff the final burden rests upon him to prove by a preponderance of evidence that the origin of said fire was due to the negligence of the defendant." Certainly no objection can be found to this part of the instruction, and, when the instruction is read as a whole, it did no more than tell the jury that the burden was upon the plaintiff, by a preponderance of the evidence, to establish the fact that the fire in question was set out by the defendant, or to trace the origin of the fire to the defendant's agency. The object of the instruction was to tell the jury that they could not guess at the origin of the fire, but that this fact must be established by evidence, and that, in order to fix a liability on the defendant by finding a verdict in his favor against the defendant, the burden was upon the plaintiff to show, by a *preponderance* of the evidence, "that the origin of said fire was due to the negligence of the defendant." The instruction might have been framed in language more apt to express this idea, but, under the facts of this case, we do not see how the jury could have been misled by it. The law on this subject has been frequently stated by this court. *C. & O. Ry. Co.* v. *Sparrow,* 98 Va. 63; 37 S. E. 302; *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763; 40 S. E. 54; *Southern Ry. Co.* v. *Hall,* 102 Va. 135, 45 S. E. 867; *C. & O. Ry. Co.* v. *Heath,* 103 Va. 64, 48 S. E. 508; *A. C. L. R. Co.* v. *Watkins,* 104 Va. 154, 51 S. E. 172.

We base our conclusion, as to this instruction, on the language of the instruction, read in connection with the evi-

dence in this case, and not on the fact that the same language has been used in opinions of this court in another case, or cases. Language used by an appellate court in deciding a case may be entirely proper and correctly state the law, and yet be wholly unsuitable as an instruction to the jury, even where the facts of the two cases are similar. The appellate judge frequently uses argumentative language and also freely expresses his opinion upon the facts of the cases, neither of which would be appropriate in an instruction to the jury. So that the mere fact that certain language has been used by the judge of the appellate court in rendering an opinion is not of itself sufficient to justify the use of the same language by a trial court in its instruction to the jury. *Atlanta & W. P. R. Co.* v. *Hudson,* 123 Ga. 108, 51 S. E. 29; *Farrall* v. *Farnam* (Md.), 5 Atl. 622.

The third error assigned is to the action of the trial court in giving to the jury the following instruction:

"The court instructs the jury that even if they believe from the evidence that the fire in question originated on the right of way of the defendant by the emission of sparks or coals of fire, yet if they believe from the evidence that said right of way was reasonably clear of combustible materials liable to ignition, then the defendant is not liable."

The plaintiff in his declaration presented two aspects of the case, one that the fire started on the right of way, which was foul, and the other that on account of the negligent construction and operation of its trains sparks were cast beyond its right of way and set out the fire in question. The instruction was addressed to the first aspect of the plaintiff's case as stated in the declaration, and although it concludes with the statement, that if they believe the hypothesis stated in the instruction the defendant is not liable, these words were equivalent to directing the jury to find for the defendant. If the jury took this view of the case, and the instruction was otherwise correct, there was no error in di-

recting a finding for the defendant. The fire could not have originated both on and off the right of way. The declaration, in separate counts, propounded both theories, and the plaintiff has no ground of complaint if the jury adopted one of the theories and rejected the other. The instruction tells the jury, if they adopt the theory that the fire originated on the defendant's right of way, still they must find for the defendant if they believe the right of way was reasonably free from combustible material. This was not taking a partial view of the case, but defined the rights of the parties in the event the jury should adopt that theory of the case. But even in this aspect of the case, the instruction to the jury was too limited in its scope and effect. The right of way of the defendant may have been reasonably clear of combustible material liable to ignition, and yet if the defendant, by reason of defective locomotives, or by the improper operation of the locomotives, scattered fire along the right of way, which was communicated to the property of the plaintiff, the plaintiff would be entitled to recover, although its right of way was reasonably clear of combustible material. The defendant could not have been allowed, simply by keeping its right of way reasonably clear of combustible material, to scatter fire along its right of way which would cause damage to others. The instruction, in this respect, should have gone further and said, that if the right of way was reasonably clear of combustible material, and the defendant's locomotives were equipped with the best appliances in known practical use, that they were in good order and carefully operated, then and in that event they should find for the defendant. The law was correctly stated in another instruction given at the instance of the defendant, hereinafter quoted in the discussion of the eighth assignment of error, but we are unable to say that the jury could not have been misled by the material omission aforesaid from this instruction, which purported to state the law ap-

plicable where the fire started on defendant's right of way, and when this is the case the defect in one instruction is not cured by a correct statement of the law in another. The instruction, as given, was erroneous. *American L. Co.* v. *Whitlock,* 109 Va. 238, 63 S. E. 991.

The fourth assignment of error is to the action of the trial court in giving the following instruction:

"The jury are instructed that not only is the burden of showing negligence by a preponderance of the evidence upon the plaintiff, but if the fire may have been started from one of two causes, for one of which the defendant is responsible, but not for the other, the plaintiff cannot recover; neither can he recover if it was just as probable that the fire was caused by the one as by the other; that is to say, if the jury believe from the evidence that the said fire might have been set out by the boys who were smoking cigarettes, who had passed along where the fire originated, if they believe from the evidence that the boys said to have passed did so pass and if they further believe from the evidence that the boys were smoking, as well as by sparks from the engine of the defendant; or if it was just as probable that the fire was caused by the one as by the other, they should find for the defendant."

The objection made to this instruction is that it consists of many incongruous, unrelated and contradictory propositions bound up together. It is also insisted that the instruction is erroneous because it takes a partial view of the evidence, and because in some respects based upon a mere scintilla of evidence. We do not think the instruction is amenable to the objections that are made to it. The propositions that are inserted in the instruction have been laid down by numerous decisions of this court. *A. C. L. R. Co.* v. *Watkins, supra; C. & O. Ry. Co.* v. *Heath, supra,* and cases cited. It is true that probably all of the propositions stated in the instruction have not been announced in a single case, but

there is no reason why two or more correct propositions of law may not be stated in the same instruction, if the jury will not be confused thereby. Nor do we think that any portion of the instruction is based upon a mere scintilla of evidence. The theory of the defendant was that the fire was set out by some agency other than the defendant. This theory was supported by testimony introduced to the effect that two boys smoking cigarettes were seen going in the direction in which the fire originated at a propitious time for it to have been set out through their negligence. It is true that this testimony was vigorously assailed, but there was other testimony in the case tending to support the theory of the defendant that the fire was not set out through its agency. The engineer who operated the only engine which in the defendant's view could have set out the fire testified that he saw the fire burning as he approached the spot where the defendant claims it originated. The defendant's foreman also testified that he saw the boys and talked with them shortly before the fire started. The defendant also offered testimony to show that the wind was blowing hard in the opposite direction from the point at which the defendant alleges that the fire started and that the fire actually started nearly 100 yards from its right of way at such point. All of this evidence tended to support the theory of the defendant that it was not responsible for the origin of the fire.

The fifth assignment of error is to the action of the court in giving the following instruction:

"The court instructs the jury that, unless they believe from the evidence that engine eleven might have caused the fire complained of, they should not consider any evidence relative to fires testified to have been set out by engine eleven nor the evidence relative to what is known as the 'second fire,' or the fire west of Woods Camp, unless they believe that the engine that might have caused the fire in question might also have originated that fire."

The objection made to this instruction is that it is incoherent, and that according to the defendant's explanation of it, "it combines two distinct charges with reference to two severable questions which are so inextricably blended as to be utterly misleading and confusing to the jury." We do not think that the instruction is amenable to the objection made. The evidence shows that there were but two engines that operated regularly on this road, and only two had run on it that day. The evidence for the defendant clearly showed that engine No. 12 was the only engine which could have set out the fire, and that engine No. 11 had not been along that part of the track since nine o'clock in the morning. There was some evidence, however, on the part of the plaintiff that engine No. 11 as well as engine No. 12 had passed over the track at an opportune time to have started the fire in question. It was to meet this condition of affairs that this instruction was asked. The fire, if set out by one of the defendant's engines, could only have been set out, according to the testimony, by engine No. 11 or engine No. 12. The defendant was satisfied that the evidence on behalf of the plaintiff was insufficient to show that engine No. 11 was at all concerned in the fire, and hence asked the court to give the instruction above mentioned; and clearly, if the jury believed that the fire in controversy had not been set out by engine No. 11, and that the engine which might have caused the fire in question might also have originated the second fire, then the instruction was proper. If the fire could only have been set out by one of two engines and one of these was eliminated entirely, then the evidence relating to fires set out by the eliminated engine was not proper for the consideration of the jury.

The elimination of the connection of engine No. 11 with the fire in controversy, in effect identified engine No. 12 as the only engine of the defendant which could have set out the fire in question, and if engine No. 12 was identified as

53

the only one that could have set the fire out, it was proper for the court to exclude from the consideration of the jury all evidence of fires set out by the other engine. *N. & W. Ry. Co.* v. *Briggs,* 103 Va. 105, 48 S. E. 521, and cases cited.

The sixth asignment of error is to the action of the court in giving to the jury the following instruction:

"The court instructs the jury that in order to warrant a verdict against the defendant, the evidence must show more than a probability of a negligent act. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established."

This instruction is in language which has been repeatedly used in the opinions of this court. *N. & W. Ry. Co.* v. *Cromer, supra; Southern Ry. Co.* v. *Hall, supra; C. & O. Ry. Co.* v. *Heath, supra; N. & W. Ry. Co.* v. *Briggs, supra.* While we do not think that the statement in the instruction, that an inference cannot be drawn from a presumption, but must be founded upon some fact legally established, could have been very helpful to the jury, we feel equally sure that in view of other instructions given in the case it could not have led them astray. In this connection see *C. & O. Ry. Co.* v. *Ware,* 122 Va. 246, 95 S. E. 183.

The seventh assignment of error was withdrawn.

The eighth assignment of error was to the refusal of the court to give the following instruction offered by the plaintiff:

"The court instructs the jury that if they believe from the evidence that the fire which consumed the lumber of the said C. P. Abernathy originated from sparks or cinders emitted by one of the engines of the defendant, then the said defendant is presumptively guilty of negligence; and that, while the law recognizes the fact that the skilful do not agree in the matter of instrumentalities and allows to any one using mechanical devices the freedom of action and judgment which must be incident to such difference in judgment

and accordingly does not permit the jury to condemn a device merely because some other person using a similar device prefers a different pattern, yet under the circumstances aforesaid, the burden is upon the defendant to prove that its said engine was equipped with the best mechanical appliances in known and practical use for preventing the escape of sparks and cinders; that it was kept in such proper condition and repair, and that it was managed and operated with such proper care and prudence as reasonably to prevent the escape of sparks and cinders and the communication of fire to the property of the said C. P. Abernathy, the plaintiff in this action."

The jury had already been sufficiently instructed on this subject, and almost in the very language of the instruction requested, and there was no error in refusing it. The instruction was fully covered by the following instructions, the first of which was given at the instance of the plaintiff, and the second at the instance of the defendant:

"The court instructs the jury that if they believe from the evidence that the fire which consumed the lumber of the plaintiff originated from sparks or cinders emitted by one of the engines of the defendant, then the said defendant is presumptively guilty of negligence."

"The court instructs the jury that if they believe from the evidence that the defendant's engine, which is alleged to have started the fire that destroyed the plaintiff's lumber, was equipped with as good a spark arrester and ash pan as is known in practical use; that such spark arrester and ash pan were in good repair, and that said engine was operated by a skilful engineer, with ordinary care, and that the right of way was reasonably clear of combustible matter, liable to ignition, they must find for the defendant, although they may also believe from the evidence that the defendant's engine set out the fire in question."

The ninth assignment of error relates to the exclusion of testimony offered by the plaintiff, that the defendant's right of way was not clear and free of combustible material at a point a mile from where the fire occurred. It is true that the evidence had been offered by the president and superintendent of the defendant company that the right of way of the defendant had been raked and burned shortly before the fire. The material point at issue was whether or not the right of way was foul at the point where the fire occurred. Upon this point the witness was asked to state if he knew what was the condition of the right of way where the fire started, and he answered, "I couldn't tell you because I don't know the conditions." He was then asked how far from the place where the fire was said to have originated was the portion of the track with which he was familiar, and he answered that it was a mile from the fire. We think there was no error in excluding this testimony. While the natural inference from the testimony of the defendant's witnesses is that the entire right of way had been raked and burned shortly before the fire, and the testimony of the witness offered showed that it had not been raked and burned throughout its entire length, it was really immaterial as tending to show what the condition of the track was at the point at which the fire originated, and the testimony offered is of too doubtful a character to be of value to the jury in arriving at a proper conclusion as to what was the condition of the track at the point of the fire.

The tenth assignment of error relates to the refusal to allow the plaintiff to show that in the latter part of May, 1915, engine No. 11 had been seen by him to set out fire. At least one witness for the plaintiff had testified that engine No. 11 as well as No. 12 had passed the place where the fire originated shortly before it broke out and it was competent, therefore, for the plaintiff to show the bad condition of engine No. 11 soon after the fire, as it would have a tendency

to show that it was in bad condition on the day of the fire, and if the jury believed that engine No. 11 might have set out the fire, it was competent to show its bad condition. The exclusion of this evidence we think was error.

The eleventh assignment of error was to the admission of testimony showing a prior consistent statement of a witness who had testified to a material fact in the case. Counsel for the plaintiff conferred with the witness, Lee Owen, who lived close to the point of origin of the fire, with reference to what he knew about it, and in answer to their interrogatories he had told them he had not seen anybody in that section who could have set out the fire, on that day. When put on the stand to testify for the plaintiff, he testified that two boys had been at his house about half an hour before the fire, and that they left his house, smoking cigarettes, going along the path in the direction in which the fire originated, and that they said they were looking for a job. This testimony took the plaintiff by surprise. Counsel for the plaintiff, treating the witness as adverse, examined him at great length on this subject, and among other things asked him if he had not offered to sell his testimony to the plaintiff's brother for $140. They also proved by the plaintiff's brother that Owen had, in effect, made such offer. After this evidence had been introduced, the defendant put a witness on the stand to prove that Owen had stated to the witness the same facts that he had testified to on the stand about seeing the two boys leave his house smoking cigarettes. The plaintiff objected to the reception of this testimony, but the court overruled the objection, and allowed the testimony to be received.

This action was brought to the first September rules, 1915, and the trial took place at the March term, 1916. It sufficiently appears that the prior consistent statement offered in evidence was made in October or November, 1915, after this action was brought. The date of the inconsistent

statement is not fixed, but it was at least two or three months before the trial. Whether it was before or after the consistent statement cannot be definitely fixed by the record, nor is the date fixed when the witness is alleged to have offered to sell his testimony to the plaintiff. Under such circumstances, the testimony as to the supposed prior consistent statement was plainly inadmissible, and it was error to receive it. The testimony in this case does not bring it within the rule which permits evidence of a prior consistent statement before the time when the supposed bias or corruption could have existed, in order to repel the presumption that the present testimony was attributable to such bias or corruption. *Repass* v. *Richmond,* 99 Va. 508, 39 S. E. 160; 1 Gr. Ev. (16 ed.) sec. 469-b.

The twelfth assignment of error is to the action of the court in allowing the engineer who operated engine No. 12 on that day to answer a question propounded to him by counsel for the defendant. The question and answer were as follows: "Were you careful in the operation of your engine?" and he answered, "Yes, sir."

Objection was made to this question in the trial court, on the ground that it was leading. In this court it is insisted that the question called for an expression of opinion by one who was not expert, and had not been shown to be qualified to give expert testimony. The question was plainly leading, and the witness should not have been permitted to answer it, but this did not constitute reversible error. It had already been shown by another witness that Burton, the witness under examination, was an engineer of experience, and was "a very good geared locomotive engineer—one of the best we have, and the most careful engineer we have." Great latitude is allowed in trial courts in the matter of the examination of witnesses and their rulings thereon will not be reversed unless clearly prejudicial to the party ex-

cepting. Ordinarily, permitting a leading question to be asked is no ground for reversal. *Smith* v. *Stanley,* 114 Va. 119, 125, 75 S. E. 742.

Whether or not we should consider the objection raised for the first time in this court, that the question called for the expression of an opinion by a non-expert witness, need not be considered, as the judgment has to be reversed on other grounds, and the question will not probably arise on another trial.

The thirteenth assignment of error relates to a statement of counsel for the defendant on cross-examination of a witness introduced on behalf of the plaintiff. The questions asked and statement of counsel are set forth in a bill of exceptions as follows:

"Q. Do you know where that shanty, in which Lee Owen lives is? A. No, I don't visit there.

"Q. I didn't ask you if you visited there; I asked you do you know where that little red shanty is? A. No, sir.

"Q. Do you know where the spur from this track which goes in a southern direction is? A. Yes, sir, I know where there is a track that goes down the branch like.

"Q. Don't you know, as a matter of fact, that there is a little red shanty there between this track and that? A. No, I have not visited it at all.

"Q. I didn't ask you if you had visited it, Mr. Turner; we are not trying to prove you have visited it. The point I am asking you, and I want you to answer, if you will pay attention, is this: I know, Mr. Turner, this situation myself, and there are others who know it, and I want to ask you to see if we coincide.

"Mr. Peterson: I object to the statement.

"The Court: I overrule the objection.

"Mr. Peterson: We except."

We see nothing in this that could have prejudiced the plaintiff. The exception was, therefore, properly overruled.

The fourteenth assignment of error was to the action of the court in declining to order a view of the premises. The question of the propriety of ordering a view lies largely in the discretion of the trial court, which should only grant it when it is reasonably certain that it will be of substantial aid to the jury in reaching a correct verdict, and whose decision will not be reversed unless the record shows that a view was necessary to a just decision. *Cutchin* v. *Roanoke*, 113 Va. 452, 74 S. E. 403; *Stonegap Colliery Co.* v. *Hamilton*, 119 Va. 271, 89 S. E. 305, Ann. Cas. 1917 E, 60. There is no controversy here as to the location of the road, and the general conditions surrounding it, and there was no necessity for a view in order to assist the jury in understanding the testimony. The testimony in connection with a plat used on the trial would seem to have been clear enough without the necessity for a view. In addition to this, it appears that delay in the trial would have been caused by ordering a view, and that the plaintiff had not made any provision to take the jury to the scene of the fire. We think there was no error in the action of the trial court in refusing to order a view.

For the errors committed, as pointed out in considering assignments of error Nos. 3, 10 and 11, the judgment of the trial court must be reversed.

*Reversed.*