# Staunton.

## Virginian Railway Company v. M. W. London.

September 22, 1927.

Absent, Prentis, P.

1. Railroads—*Fires—Negligence of Railroad—"Featherstone Act"* (*Acts 1908, page 388*)—*Code of 1919, Section 3992.*—Since the passage of the "Featherstone act" (Acts 1908, page 388) which, in effect, eliminates the question of negligence where fires were caused by sparks from railroad engines, the sole question for determination in such cases is, whether the fire was set out by sparks or coals thrown or dropped from an engine or engines of the railroad company.

2. Railoads—*Fires—"Featherstone Act"—Verdict of the Jury in Favor of Plaintiff.*—In an action against a railroad for damages to property by fire caused by sparks from the engine or engines of the railroad, it was assigned as error that the verdict was contrary to the law and the evidence and was without evidence to support it.

   *Held:* That the jury by its verdict for plaintiff having said that the fire was set out by the railroad company, the sole question was whether there was evidence to support this conclusion.

3. Railroads—*Fires—"Featherstone Act"—Burden upon Plaintiff to Show Defendant was Responsible for the Fire.*—The "Featherstone act" (Acts 1908, page 388) did not change the rule that the burden is upon the plaintiff to prove that defendant railroad was responsible for the fire.

4. Appeal and Error—*Conflicting Evidence—Fires Set out by Railroads—"Featherstone Act"* (*Acts 1908, page 388*).—Where in an action against a railroad company for damages to property by fire set out by sparks from the engine or engines of the railroad company, conflicts in the evidence exist, the jury's verdict in favor of the plaintiff will be considered as establishing the contentions of the plaintiff with reference to such conflicts.

5. Fires—*Railroads—Evidence to Support Finding that Railroad Engine Caused Fire—Case at Bar.*—In the instant case, an action against a railroad for damages to property by fire set out by an engine or engines of the company, there was evidence that the engines of the company, which were situated in a field near the barn of the plaintiff,

continually emitted sparks prior to the fire and shortly afterwards. Plaintiff testified that fire was continually kept in nearly every engine placed on the field behind his barn, and that he had seen live sparks fall on his barn and in his yard. This evidence was corroborated by other witnesses. There was evidence that the wind was blowing in the direction of the barn from the railway tracks at the time of the fire. There was evidence that it was the duty of "fire and water men" employed by the railroad at about the time the fire took place to examine the engines in the yard and keep their fires in good condition by putting the blower on and "hooking up" the fire, and that live sparks will be emitted when this is done. There was also evidence as to other fires in the vicinity of the field.

*Held:* That the jury were justified in concluding from this and other evidence that the sparks emitted from the engines of defendant railroad set the fire.

6. EVIDENCE—*Inference Based Upon a Presumption—Exception to the Rule.*—Although as a general rule an inference cannot be based upon a presumption, if the inference or presumption is based on such evidence that it may be regarded as a fact proved in the case, then, although the evidence on which it is based may be circumstantial evidence, such inference or presumption of fact may itself form the basis for another inference of fact equally as if it had been proved by direct evidence.

7. RAILROADS—*Fires—Evidence—Failure of Defendant to Rebut Plaintiff's Prima Facie Case—Case at Bar.*—In the instant case, an action against a railroad company for damage by fire, it was contended by the railroad that there was no proof that the fires in the engines in a field near the barn of plaintiff which was burned were "hooked up" and the blowers used on any of the engines in the field on the night of the fire. It was proven, however, that it was the duty of the employees of the railroad company at 11 o'clock every night to "hook up" the fires and blow them if they needed it and that it was the custom to do it. It was also in evidence that when this was done sparks were emitted from the smoke stacks.

*Held:* That the evidence raised a presumption that the engines were hooked up and blown and that they emitted sparks, and that the defendant not having introduced any evidence to rebut this presumption, the jury had the right to conclude that it was conclusive of the fact.

8. APPEAL AND ERROR—*Fires—Railroad—Weight of Verdict for Plaintiff.*—Where in an action against a railroad for damages to property from fires set by sparks from the engines of the railroad, the jury had a right from the evidence to draw the conclusion, as they did, from all the circumstances, that the fire was caused by sparks from the engines of the railroad, the verdict of the jury in favor of the plain-

tiff cannot be set aside on appeal whatever the weight of the evidence may have been.

9. Fires—*Railroads—Instructions—"Featherstone Act"—Case at Bar.*— Under the "Featherstone act" (Acts 1908, page 388), the sole question is, as the court instructed the jury in the instant case, whether the "fire originated from sparks or coals dropped or thrown from the engine or engines of the defendant." The court in a modified instruction offered for the defendant placed the burden of proof as to the occurrence of the fire and as to its origin upon the plaintiff, where it properly belonged, and then added that the plaintiff could not carry this burden by showing these essential things by evidence which left the jury to determine them by mere supposition or conjecture, and in another instruction emphasized the purely circumstantial character of the plaintiff's evidence in the instant case.

   *Held:* That there was clearly no error in this action of the court.

10. Appeal and Error—*Fires—Railroads—Harmless Error—Evidence that Sparks Could Have Gotten Through Crevices in the Walls of the Barn Burned.*—In an action against a railroad for damage to property by fire, it was assigned as reversible error that the plaintiff was permitted to testify that sparks from engines of defendant could have gotten through a crevice between the rear doors of his barn. The plaintiff in addition testified that the cracks were from a quarter of an inch to a half inch and more in width.

   *Held:* That it was clear that the sparks could have passed through such cracks and the admission of a statement that they could was harmless error.

11. Fires—*Railroads—Evidence—Plaintiff's Reason for not Suing Railroad for Former Fire—Appeal and Error—Prejudicial Error—Case at Bar.*— In an action against a railroad for damage to property by fire, the plaintiff testified that the reason he did not bring suit against the railroad on account of a former fire was that "everybody was anxious for the railroad to come and wanted to encourage it;" and that he expected the railroad company to keep its engines further back and get further away from him.

   *Held:* That the defendant was not prejudiced by this testimony.

12. Fires—*Railroads—Evidence—Other Fires—Case at Bar.*—In the instant case, an action against a railroad for damage by fire to plaintiff's property, it was assigned as error that the court erred in permitting plaintiff to testify with reference to various other fires in connection with the evidence of emission of sparks from defendant's engines that had destroyed his property at other times. Defendant contended that conditions had changed in its yard since the former fires by the building of a roundhouse in which the engines were fired.

   *Held:* That, as in the instant case, the evidence as to sparks being emitted from defendant's engines had reference to engines which

were not in the roundhouse but upon the tracks in an open field, the alleged change in condition did not affect the admissibility of the evidence. Moreover, under the "Featherstone act" (Acts 1908, page 388), which eliminates negligence as an issue, the rule as to change of conditions is inapplicable.

13. Fires—*Railroads—Damages—Type of Material Required for Rebuilding by Ordinance.*—In an action against a railroad for damages to plaintiff's property by fire, the admission of evidence over defendant's objection as to the material which the city ordinances required to be used in rebuilding was assigned as error. The witness did not testify as to the cost of rebuilding, but merely stated what material was required by the ordinances. The court explained to the jury during the trial that the measure of damages was the value of the property at the time of the fire and instructed the jury by written instruction that if the plaintiff recovered he could only recover the value of the property as of the date of the fire.

*Held:* That there was no merit in this assignment.

14. Fires—*Railroads—Evidence—Rebuttal—Discretion of Court—Case at Bar.*—In the instant case, an action against a railroad for damage to property by fire, plaintiff and another witness were permitted to testify in rebuttal that they had seen engines of defendant railroad drop coals of fire from ash pans prior to the fire, and that they had seen engines taken to the ash pit and brought back with ash pans open.

*Held:* That the admission of this evidence not only was not prejudicial to defendant, but was within the general scope of the allegations of the declaration as to how the fire originated.

15. Evidence—*Time and Manner of Introduction of Evidence—Discretion of Court—Fires—Railroads—Rebuttal Evidence—Case at Bar.*—In the instant case, an action against a railroad for damage to property by fire, it was assigned as error that the court allowed plaintiff and another witness to testify in rebuttal that they had seen the engines of the railroad drop coals of fire from ash pans prior to the fire. The ground for this assignment did not clearly appear in the defendant's brief, but if the objection was that the evidence was improper in rebuttal, the answer is that the time and manner of the introduction of evidence lies within the sound discretion of the trial court, and in the absence of abuse of this discretion resulting in prejudice to defendant's case, the Supreme Court of Appeals will not reverse the judgment of the trial court.

Error to a judgment of the Law and Chancery Court of the city of Roanoke, in an action of trespass on

the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Williams, Loyall & Tunstall, Hall & Buford* and *Martin & Wingfield,* for the plaintiff in error.

*Funkhouser & Apperson* and *Kuyk & Coleman,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This is an action of trespass on the case, in which M. W. London, hereinafter called plaintiff, suing in his own right and on behalf of the Continental Insurance Company, recovered a judgment against the Virginian Railway Company, hereinafter called the railroad company, for $12,500.00 for the alleged burning of the plaintiff's barn by sparks or coals dropped or thrown from the railroad company's engines.

The assignments of error, seven in number, include the action of the court in refusing to set aside the verdict because, as alleged, it is contrary to the law and the evidence and is without evidence to support it; in refusing defendant's instruction No. 1 as tendered and in giving it as modified by the court; and in permitting the introduction of certain evidence for the plaintiff over the objection of the defendant.

The first and most difficult question to be considered upon the writ of error is whether the verdict is without evidence to support it. In considering this question we will treat the evidence introduced by the plaintiff over the objection of the defendant as competent, because, as will be seen later, there was no

harmful error committed by the court with reference to the introduction of this evidence.

[1, 2] Since the passage of the "Featherstone act" which, in effect, eliminates the question of negligence from cases of this character (see Acts of Assembly, 1908, page 388 and *Norfolk and Western R. Co.* v. *Spates*, 122 Va. 69, 94 S. E. 195), the sole question for determination in such cases is, whether the fire was set out by sparks or coals thrown or dropped from an engine or engines of the railroad company, and in the instant case, upon the assignment of error under consideration, the jury by its verdict having said that the fire was put out by the railroad company, the sole question is whether there is evidence to support this conclusion.

It is clear that the question at issue necessitates a statement of the facts developed at the trial somewhat in detail, but the statement will be made, practically, from the standpoint of a demurrer to the plaintiff's evidence.

[3, 4] It will be kept in mind that the Featherstone act (*supra*) did not change the rule that the burden of proof is still upon the plaintiff to prove that the defendant was responsible for the fire (*N. & W. Ry. Co.* v. *Spates, supra*), but where conflicts in the evidence exist the jury's verdict will be considered, under the familiar rule, as establishing the contention of the plaintiff with reference to such conflict.

For a number of years before the loss for which this suit was brought, the plaintiff, M. W. London, owned several lots on the west side of Jefferson street in Roanoke city. He had owned this property for a number of years prior to the time the Virginian Railway Company acquired property in that section of the city. In 1920 or 1921 a barn was built on one of these lots

entirely covering it. It is for the loss resulting from the burning of this barn and its contents that suit was brought, the plaintiff alleging in the declaration that sparks or coals of fire were communicated to his building from the engines of the defendant company, setting out the fire.

[5] The fire, which consumed the barn and contents, occurred on the night of April 17, 1925, and the barn was discovered to be on fire at eleven o'clock or a few minutes thereafter.

The plaintiff is a contractor, and since the barn was built had used it in his business. In October, 1924, having secured a contract in North Carolina, he nailed up the barn after having drained the gasoline from several automobiles and trucks left in the building, and with his wife went to North Carolina to superintend his business there.

An elderly woman and her daughter occupied the plaintiff's dwelling house, which was situated adjacent to and to the south of the barn.

When the plaintiff left Roanoke he locked up in the barn considerable equipment necessary in the contracting business, including various kinds of machinery, three trucks, one automobile, wagons, etc., and also two loads of hay which had been in the barn about a year before the fire and which was perfectly dry when put in. The hay was located about midway between the front and the back of the building.

The barn was built of planks nailed perpendicularly to the ground placed side by side, but which had shrunk and warped, leaving cracks between the boards of between one-half an inch and three-quarters of an inch. There was a rubberoid roof on the building. The east side of the building fronted on Jefferson street, and there was only an alley fifteen feet wide separating

the barn from the defendant's property, the rear of the barn being built right to the edge of the plaintiff's property line. West of the alley was what is commonly called by the railway people a "field," on which were located eight tracks running off at various angles from a turntable, which is almost directly west of where the barn stood. These tracks were between the turntable and the barn. To the southwest of the turntable was the defendant's roundhouse. According to the evidence of the defendant, four of the engines standing in the field back of the barn had fires in them on the night of April 17, 1925. Track 4 came directly to the back of the barn and was only forty-nine feet from it. Next to track 4 and south of it was track 3, which was eighty-five feet from the barn. Farther around in the same direction from track 4 was track 2, which was 114 feet from the rear of the barn. In a northwesterly direction from the barn, and north of track 4 was track 8, which was between 114 to 175 feet from the barn. On the night the barn burned there were engines on tracks 2, 3, 4 and 8 with fires in them. These tracks were used for storing engines, some kept in such condition that they were ready for immediate use.

There was evidence that engines of the defendant company did continually emit sparks and live coals prior to the fire and also shortly afterwards. The plaintiff testified that fire was continuously kept in nearly every engine placed on the field behind his barn, and that he had seen live sparks come out of them on many occasions, falling not only on his barn and in his yard, but even as far as Jefferson street, which was one hundred feet farther from the defendant's property than the rear end of the plaintiff's barn and that, when the blower was used on these engines, not only sparks but also flames came out of the smoke stack.

. Other witnesses testified that sparks coming from the engines of the Virginian Railway Company placed on the field back of the London barn had burned clothes hung in the yard to dry.

As to the direction in which the wind was blowing there was a conflict in the evidence but at least three witnesses testified that it was blowing in the direction of the barn from the railway tracks.

A circumstance corroborating these witnesses as to their statements that the fire started nearer the railway tracks and burned away from them is the fact that the northeast corner and part of the north wall of the barn did not burn at all.

The evidence also shows that in order to keep the engines, stored on the field, ready for immediate use, it was necessary for them to be attended to regularly and this was done by fire and water men. The evidence shows that the fire and water men worked on a shift from three in the afternoon to eleven at night, and that, just before they stopped work, it was their duty to examine every engine on the yard and to get the fires in good condition for the next shift, this being done by putting the blower on and "hooking up" the fire. As heretofore stated there is considerable evidence that live sparks will be emitted when this is done. The plaintiff's barn, according to all the evidence in the case, was discovered to be on fire at eleven o'clock at night or a few minutes after.

. The great weight of the evidence was to the effect that the fire started on the inside of the barn in the hay which was located about the middle of the barn, but the evidence was not conclusive as to whether the fire started on the inside or outside of the barn, nor do we regard it as material, as live sparks emitted from the engines could have started a fire either inside or

outside the barn, under conditions as disclosed by the evidence. There was also considerable evidence that other fires had occurred in the immediate vicinity of the railroad company's roundhouse and field.

The plaintiff's contention is that the evidence is sufficient to sustain its theory that the barn was set on fire by sparks emitted from the defendant's engines. The defendant claims that the origin of the fire is unknown, and evidence was introduced to the effect that the rear of the barn was a rendezvous for boot-leggers and other disreputable persons who drank and smoked there. One witness testified that about six o'clock on the afternoon of the night the barn was burned several persons were seen loafing around the barn and one was seen to take a drink out of a bottle and it is urged that it is more probable that these people set fire to the barn than that it originated from sparks from defendant's engines. But all these theories as to the origin of the fire were submitted to the jury and their verdict is conclusive as to the origin of the fire if there is sufficient evidence to support their finding. This brings us to the real question in the case, and that is whether the jury was justified in concluding from all the evidence that sparks emitted from the engines of the defendant company set the fire.

There was no eyewitness as to the origin of the fire. The evidence relied on by the plaintiff to prove that the fire was started by sparks emitted from the defendant's engines was wholly circumstantial, but the circumstances, as heretofore set out, we think, are such that they afford ample support to the finding of the jury. The defendant asserts that in order to reach the conclusion the jury reached in this case they violated the principle that an inference cannot be

based upon a presumption. It is argued that the jury had to presume that engines standing on the tracks leading from the turntable emitted sparks; that these sparks were carried by the wind one hundred feet and driven through the cracks of the barn to the middle of it, and in order to establish the first presumption, that it was necessary to further presume that fires in the engines were "hooked up," and that the blowers were used, as the uncontradicted evidence was to the effect that engines setting on a track with fires in them did not emit sparks unless the fires were "hooked up" and the blowers used.

We think the question as to the sufficiency of the evidence, in the instant case, the question as to whether the jury's verdict is founded upon inferences based on inferences, and the question (which will be later referred to) as to whether the evidence of other fires was admissible, were all settled by the decisions in *Norfolk and W. R. Co.* v. *Spates, supra,* and *C. & O. R. Co.* v. *Ware,* 122 Va. 246, 95 S. E. 183. Certainly the facts proven in the latter case were not as convincing with reference to the origin of the fire as they are in the instant case.

[6] The verdict was sustained in these cases upon evidence purely circumstantial, which this court, speaking through Sims, P., held warranted the jury in finding as a fact that the fire originated on the north side of the railroad, that it originated shortly after eleven o'clock, at which hour a fast passenger train was due to pass the point of origin of the fire, and that the wind was blowing in the general direction from the defendant's right of way toward the plaintiff's land, where the fire started. There was no proof that the train actually passed, but this court in that case, meeting the same contention as that of the railroad company in the instant case, that an inference could

not be based upon an inference, held the contention without merit, among other things saying: "Referring to the rule that an inference cannot be drawn from an inference or presumption, McCabe, Jr., in delivering the opinion of the court in *Hinshaw* v. *State*, 147 Ind. 334, at page 363, 47 N. E. 157, 166, says: 'There is an important exception to that rule, however. A fact in the nature of an inference may itself be taken as the basis of a new inference, whether intermediate or final, provided the first inference has the required basis of a proved fact.' If the inference or presumption is based on such evidence that it may be regarded as a fact proved in the case, then, although the evidence on which it is based may be circumstantial evidence, such inference or presumption of fact may itself form the basis for another inference of fact, equally as if it had been proved by direct evidence. 1 Wigmore on Ev., section 41." In applying the principle to the facts of the *Ware Case*, Judge Sims said: "The testimony for plaintiff as to the time of passing of the train tended to prove such time and was as definite evidence as the plaintiff could produce on this point, without resorting to calling the defendant itself, through its agents or records, to testify in the case. The plaintiff's witnesses on the subject, living as they did close by the railroad, and having grown accustomed to the passing of trains, were naturally, as a rule, unconscious of their passing, and so could not be expected to testify with more definiteness than they did on that subject. In this situation, and in view of the fact that definite evidence of the exact time at which the train passed was peculiarly within the possession of the defendant, being furnished by its record of the movement of its trains, the testimony for plaintiff furnished *prima facie* evidence of the fact that the train ran on time on the

day in question, and hence passed the point of origin of the fire a short time before the fire originated. The defendant having failed to introduce any evidence to rebut the *prima facie* proof aforesaid, such proof became conclusive of the fact in question. 1 Wigmore on Ev., section 286, and authorities cited.

"As quoted by the learned author of the work last cited, Lord Mansfield, C. J., said in *Blatch* v. *Archer,* Cowp. 66: 'It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other side to have contradicted.' And as also quoted by the same learned author above referred to, Best, J., speaking of a presumption of fact arising from evidence introduced by one party, which evidence is in itself inconclusive, said in *R.* v. *Burdett*, 4 B. & Ald. 122: 'If the opposite party has it in his power to rebut it by evidence, and yet offers none, then we have something like an admission that the presumption is just.' "

[7] In the instant case it is contended that there is no proof that the fires in the engines were "hooked up" and the blowers used on any of the engines in the field on the night of the fire. It was proven, however, that it was the duty of the force which quit work at eleven o'clock every night to hook up the fires and blow them if they needed it and that it was the custom to do it. It was also testified that when this was done sparks were emitted from the smokestacks. The evidence introduced was sufficient to raise a presumption that the engines were hooked up and blown and that they emitted sparks, and the defendant having failed to introduce any evidence to rebut this presumption the jury had the right to conclude, as they did, that it was conclusive of the fact. It was within the power

of the railroad company to rebut the presumption by evidence. It offered none, certainly none of a positive character. The result is we have something like an admission that the presumption is good. The additional proof as to the direction of the wind, the emission of sparks on numerous occasions before and after the fire, other fires started by the defendant's engines, and numerous other fires in the immediate vicinity of the defendant's yard, certainly justify the verdict in view of the decision of the *Ware Case, supra.*

[8] We conclude that the jury had a right to draw such conclusions as they did from all the circumstances in this case and that this court has no right, whatever the weight of the evidence may have been, to set aside the verdict. *Norfolk and Western Railway Co.* v. *T. W. Thayer Co.*, 137 Va. 294, 119 S. E. 107.

[9] The second assignment of error is that the court erred in refusing defendant's instruction No. 1 and in giving instruction No. 1 as modified. The instruction as offered and the instruction as modified appear in the margin.*

Since the enactment of the "Featherstone act," *supra*, the question as to why the fire occurred in cases of the character under consideration is not one for the consideration of the jury. The question of negligence on .

---

*Instruction No. 1—as offered.* "The court instructs the jury that the burden is on the plaintiff to show by a preponderance of the evidence why and how the fire occurred, and to warrant a verdict for the plaintiff the plaintiff must prove by a preponderance of the evidence that the fire originated from sparks or live cinders emitted from an engine or engines of the defendant.

"The jury are further instructed that the plaintiff cannot carry the burden of showing why and how the fire occurred by evidence that leaves the jury to determine that question by mere supposition, guess, or conjecture."

*Instruction No. 1 as modified and given.* "The court instructs the jury that the burden is on the plaintiff to show by a preponderance of the evidence that the fire occurred, and to warrant a verdict for the plaintiff, the plaintiff must prove by a preponderance of the evidence that the fire originated from sparks or coals dropped or thrown from the engine or engines of the defendant.

the part of the railway company is eliminated from such cases. The sole question is, as the court instructed the jury, whether the "fire originated from sparks or coals dropped or thrown from the engine or engines of the defendant." The court in the modified instruction placed the burden of proof as to the occurrence of the fire and as to its origin upon the plaintiff, where it properly belonged, and then added that the plaintiff could not carry this burden by showing these essential things by evidence which left the jury to determine them by mere supposition or conjecture. There was clearly no error in this action of the court. Instruction No. 2 (margin 2) emphasizes the purely circumstantial character of the plaintiff's evidence in the case and carries a further warning and caution to the jury.

[10] The third assignment is that it was reversible error to permit the plaintiff to testify that sparks could have gotten through a crevice between the rear doors of his barn. In addition to testifying that sparks could have gotten through the crevices referred to the plaintiff testified that the cracks were from a quarter of an inch to a half inch and more in width. It is clear from this testimony that sparks could have passed through such cracks and the admission of a statement

"The jury are further instructed that the plaintiff cannot carry the burden of showing that the fire originated from sparks or coals dropped or thrown from defendant's engine or engines by evidence that leaves the jury to determine that question by mere supposition, guess, or conjecture."

2. "The court instructs the jury that in order to warrant a verdict for the plaintiff the evidence must show more than a probability that the fire was caused by sparks or coals dropped or thrown from the defendant's engine or engines, and where there is no direct evidence as to the origin of a fire and the plaintiff relies solely on circumstantial evidence to prove the origin of the fire, the facts and circumstances proved must not only be consistent with the theory that the fire originated from sparks or coals dropped or thrown from an engine or engines of the defendant, but the facts and circumstances proved must be inconsistent with any other rational theory as to the origin of the fire than the one relied on by the plaintiff."

that they could was harmless error. *Standard Paint Co.* v. *Vietor & Co.* 120 Va. 595, 91 S. E. 752.

[11] The fourth assignment of error is that the court erred in permitting the plaintiff to testify that when the first barn on the same lot burned the barn was constantly occupied, and at that time everybody was anxious for the railroad to come and wanted to encourage it, and that he expected the railroad company to keep its engines further back and get further away from him, and that for these reasons more than anything else he did not bring suit against the company on account of that fire.

It is sufficient to say that there is no merit in this assignment for the reason that we cannot see how or in what way the defendant was prejudiced by it.

[12] Assignment of error No. 5 is that the court erred in permitting plaintiff to testify with reference to various other fires that had destroyed his property at other times. All the evidence as to other fires, in the instant case, in connection with the evidence of emission of sparks from defendant's engines, was admissible under authority of *N. & W. R. Co.* v. *Spates, supra; New York R. Co.* v. *Thomas,* 92 Va. 606, 24 S. E. 264, and *Abernathy* v. *Emporia Mfg. Co.,* 122 Va. 406, 95 S. E. 418.

The defendant cites Greenleaf on Evidence (16 Ed.) at page 86, as follows: "The result of the precedents seems to be as follows: (1) Other emissions of sparks are generally received either (a) to show a capacity to emit sparks and cause the fire, or (b) to show a negligent construction dangerously likely to emit sparks; the instances may be either before or after the time in question, but perhaps, if they are not near in time, it should be shown that no change of condition had occurred," and contends that conditions have changed

in its yard by the building of a roundhouse in which the engines are fired, since the other fires testified to, occurred. There are two very good reasons why this alleged change in condition does not affect the admissibility of the evidence as to other fires—one is that the evidence as to sparks being emitted from engines had reference to engines which were not in the roundhouse at all but were upon the tracks in the open field and the testimony showed that sparks were emitted when the fires were being "hooked up" and the blower used in the open field. The other reason is that the author was evidently referring to conditions which amounted to negligence, and clearly, evidence of fires resulting from such conditions would not be admissible to show negligence in case of a subsequent fire when the conditions had been changed. The clause as to change of conditions, therefore, is not applicable to the instant case in view of the "Featherstone act," which eliminates negligence as an issue.

For cases dealing with the subject of testimony of other fires see *Director General of Railroads* v. *Johnson,* 1 W. W. Har. (Del.) 397, 114 A. 759; *Midland Valley R. Co.* v. *Taylor,* 85 Okl. 95, 204 Pac. 1102; *Kansas City Southern R. Co.* v. *Jones,* 90 Okl. 231, 216 Pac. 909; *Koontz* v. *Oregon Ry. & Nav. Co.,* 20 Ore. 3, 23 Pac. 820; *Redman* v. *Chicago, etc., R. Co.* (Mo. App.), 278 S. W. 95; *C. & O. Co.* v. *Ware* (Va.), *supra.* In the first named case several witnesses were allowed to testify over the objection of the defendant that they had seen former fires on their farm and on the plaintiff's farm. They stated they did not know the cause of the fires but they started shortly after trains had passed. Evidence of former fires was admitted in most of the cases cited for a twofold purpose, to show habitual negligence and also to show that the fire

originated from the cause alleged. *Redman* v. *Chicago, etc., R. Co. supra.*

[13] The sixth assignment of error is based on the admission of evidence over the defendant's objection as to the material which the ordinances of the city of Roanoke require to be used in a building on the site where the barn formerly stood.

The witness did not testify as to the cost of rebuilding in compliance with the requirements of the city ordinances, but merely stated what material was required by the ordinances to be used in buildings in that section of the city. Furthermore, the court explained to the jury during the trial of the case that the measure of damages was the value of the property at the time of the fire and instructed the jury by written instruction that if the plaintiff recovered he could only recover the value of the property as of the date of the fire. There is no merit in this assignment.

[14, 15] The seventh assignment of error is that the court erred in allowing the plaintiff and one other witness to testify in rebuttal that they had seen engines of the Virginian Railway drop coals of fire from ash pans prior to the fire, and that they had seen engines taken to the ash pit and brought back on the tracks with the ash pans open. The ground upon which this assignment is made does not clearly appear in the defendant's brief. The admission of the evidence not only was not prejudicial to defendant, but it was within the general scope of the allegations of the declaration as to how the fire originated. If the objection is that the evidence was improper in rebuttal, the answer is that the time and manner of the introduction of evidence lies within the sound discretion of the trial court, and in the absence of abuse of this discretion resulting in prejudice to defendant's case, this court will not reverse the judgment of the trial court.

In *Grand Trunk R. Co.* v. *Richardson*, 91 U. S. 454, 23 L. Ed. 356, this is said: "But whether it (evidence of other fires) was strictly rebutting or not, if it tended to prove the plaintiff's case, its admission as rebutting was within the discretion of the court below, and not reviewable here."

See also *Ashby* v. *Virginia R., etc., Co.*, 138 Va. 310, 122 S. E. 104; *Forbes* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15.

Upon the whole case, we conclude that there is evidence to support the verdict of the jury, and that the court committed no reversible error in the admission of evidence or in the instructions, and that the verdict and judgment complained of should be affirmed.

*Affirmed.*