# Richmond

HARRY J. ABRAMS v. L. M. WINESBURG, ADMINISTRATOR OF MABEL WINESBURG, DECEASED.

November 14, 1935.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Chinn and Eggleston, JJ.

The opinion states the case.

*M. L. Walton, Jr.,* for the plaintiff in error.

*F. S. Tavenner* and *F. S. Tavenner, Jr.,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

L. M. Winesburg, administrator of Mabel Winesburg, deceased, instituted an action at law against John Cook, Gaylord Cook and Harry J. Abrams to recover damages for the death of Mabel Winesburg on account of the alleged negligence of the defendants. The action against John Cook, who is the father of Gaylord Cook, was not prosecuted. The jury rendered a joint verdict against Gaylord Cook and Harry J. Abrams for $2,000, which, as to Gaylord Cook, was set aside by the court because of his infancy, he not being represented by a *guardian ad litem.* The verdict was sustained as to Abrams and judgment thereon pronounced by the court.

It was alleged that the joint negligence of Abrams and Gaylord Cook was responsible for the death of Miss Winesburg; that she and her sister were the guests of Gaylord Cook, who was driving a Ford touring car which collided with a Ford truck that was being driven by Abrams. The touring car and truck were being driven in opposite directions. The allegations are that Abrams' negligence consisted in his failure to maintain a proper lookout in the operation of his truck and to keep it under proper control; to have it properly lighted and that he

drove his truck at the time at an excessive speed and to his left of the center of the road.

The accident occurred about nine o'clock on the night of October 12, 1932 on the Lee-Jackson highway, near Woodstock. The general direction of the highway at and near the scene of the accident is north and south. The highway had just been reconstructed and it was sufficiently wide for three lanes of traffic, the macadamized road-bed being approximately twenty-eight feet in width with six feet of level shoulders on either side. On the day of the accident a coating of fresh tar and gravel had been applied on the eastern one-third portion of the macadam surface, which was Abrams' side of the highway. Abrams, who was a produce merchant, was returning to his home in Washington in his Ford truck, which was heavily loaded with eggs and chickens. He was driving in a northerly direction while Gaylord Cook was driving his touring car in a southerly direction. Cook and his brother, Bernice Cook, Mabel and Esther Winesburg were all occupying the front seat of the touring car. Mabel was sitting next to Gaylord Cook, Bernice sat next to her and Esther was sitting on Bernice's lap. There were no occupants of the rear seat. The two girls suffered broken necks from the impact and died almost instantly, the two Cook boys were injured but recovered.

Shortly after the collision a flash light photograph was taken of the truck and the Ford touring car before either had been moved. When they came to rest after the collision the truck was pointing north and its front left wheel was three feet from the western (Cook's) side of the road. It was standing almost parallel with the line of the road. The Ford touring car was standing parallel with the truck and close to it. It was also pointing in a northerly direction.

The physical facts show that the left front wheel of the touring car and the right front wheel of the truck came together. The parts of the touring car which were most seriously damaged, were the left front wheel, the left

front fender and the left rear side. The right side of the touring car did not appear to be damaged, nor was the left side of the truck damaged.

There are three assignments of error to the judgment of the court. It is claimed that there was no evidence of any negligence on the part of Abrams which contributed proximately to the death of the plaintiff's decedent and that she was guilty of contributory negligence. There were no objections to the instructions of the court. The issues of the negligence of the defendants and the contributory negligence of Miss Winesburg, were raised on a motion to strike the plaintiff's evidence at the time it was concluded, and on a renewal of that motion after all of the evidence had been introduced, and finally, on a motion to set aside the verdict.

One theory of the plaintiff in the court below was that his decedent met her death through the joint or concurring negligence of Gaylord Cook and Harry J. Abrams. Aside from any negligence of which Cook may have been guilty, here we are concerned only with the question of whether Abrams was guilty of any negligence which proximately contributed to the death of Mabel Winesburg. If he was, we must affirm the judgment regardless of any negligence on the part of Cook.

The two Cook boys and Abrams testified. They were the only eye witnesses. Gaylord Cook testified that he was seventeen years of age and that he was driving the touring car in a southerly direction, on his (West) side of the road at the time of, and just prior to the accident; that he saw the lights of the truck when it was about 1,000 feet away; that near that point he thought the truck turned into a side road and off of the highway upon which he was driving, and that he never saw the truck or its lights from that point to the point of collision. He further testified that he was talking to Mabel Winesburg at the time; that she had just turned up his coat collar because it was cold and that he was not looking for the truck after it passed the intersecting side road. His testi-

mony was inconclusive and considerably weakened upon cross-examination but it was the province of the jury to weigh it and give it such consideration as they thought it merited.

Bernice Cook testified that he did not see the on-coming truck because Esther, the sister of Mabel, was sitting on his lap, but that the touring car was being driven on the right side of the road; that if it had been driven over the portion of the road which had been freshly coated with tar and gravel he would have known it; and that the car in which he was riding did not turn suddenly to the right just prior to the collision.

Abrams gave his account of the accident. He said the Cook car was on his (East) side of the road and that he remained on his side "hoping they would turn back to their side; they did not turn back but maintained my side of the road and I saw that a collision was imminent— there was only one thing in my mind, that was to get out of their way so as not to have an accident; the only thing I could do in that moment of emergency was a sharp turn to the left because they were occupying my right-hand side of the road, that was the only thing I could have done to avoid an accident. As I did that, they made a very sharp turn to the (their) right and their car skidded back and swept around and crashed into my truck." He was cross-examined at length and his account of the accident was weakened, but like Gaylord Cook, he was before the jury, and it was their duty to give his testimony such consideration and weight, as to them seemed proper. *Parsons* v. *Parker,* 160 Va. 810, 170 S. E. 1.

One Coffman testified that he took Abrams to Washington just after the accident and that Abrams told him, that he (Abrams) did not drive his truck to the right of the Cook car because he did not want to take the chance of upsetting his load of eggs and chickens, and that he needed the eggs. Abrams also told Coffman on the same occasion that he had killed two girls; that he was lucky to get away which was due to some friends.

The photographs which were introduced showed very clearly the physical surrounding. They showed the highway, the truck and touring car. The points of impact showing the damage to the truck and car, and the point where they came to rest after the collision showing the respective positions occupied by them in the road, were indicated on the photograph. In addition to the photographs the jury had a view of the place of accident.

Both Cook and Abrams were entirely familiar with the highway having frequently driven over it at the point of collision.

When we consider the testimony of the witnesses, the view of the jury, the physical facts which were pointed out to the jury from the photographs, and the reasonable inferences favorable to the plaintiff to be drawn from all of the evidence, we think the verdict is sufficiently supported by the evidence.

The question of the contributory negligence of the plaintiff's decedent was submitted, under proper instructions, to the jury, and this as well as the primary negligence of Abrams were jury questions.

There were twenty-seven instructions and every phase of the case fully covered, in so far as the law was concerned. They properly submitted to the jury all relevant issues that the evidence tended to support. When we give the verdict and judgment the weight to which they are entitled, we are compelled to sustain them.

In speaking of the weight to be given the verdict of a jury approved by the trial court, Mr. Justice Holt in *Norfolk & Western Ry. Co.* v. *Richmond Cedar Works,* 160 Va. 790, 170 S. E. 5, 7, said:

"We do not sit as a jury, nor are we a substitute for it. Here we have a verdict confirmed by the trial court. We must sustain it if it rests upon evidence which a jury could in reason have believed. Substantial conflicts in credible testimony are for it. This rule we have, in case after case, stated and restated.

"In *Virginian Railway Co.* v. *London,* 148 Va. 699, 139 S. E. 328, 331, Judge Chichester said: 'We conclude that the jury had a right to draw such conclusions as they did from all the circumstances in this case, and that this court has no right, whatever the weight of the evidence may have been, to set aside the verdict. *Norfolk & Western Ry. Co.* v. *T. W. Thayer Co.,* 137 Va. 294, 119 S. E. 107.' "

The judgment is affirmed.

*Affirmed.*

BROWNING, J., dissenting.